86 Washington Avenue
Milltown, NJ 08850
Tel: 732-390-0480
Fax: 732-390-0481
Cell: 732-690-2093
Email: green@lawgp.com

# GREEN & PAGANO, LLP
## Attorneys at Law
Michael S. Green
Dr. Alexander R. Pagano*
Of Counsel
Anthony R. Fiore
Antonietta L. Milelli
* *NJ & NY Bar*

30 Vreeland Road
Bldg. A., Suite 230 A
Florham Park, NJ 07932
Tel: 973-301-2228
Fax: 973-301-2277
Cell: 973-476-1220
pagano@lawgp.com

Reply To:
☒ Milltown Office
☐ Florham Park Office

August 1, 2006

***Via Hand Delivery***

Clerk of the Court
United States District Court
for the District of New Jersey (Newark)
Martin Luther King, Jr. Federal Building &
U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re: **United States of America, and ex rel. Mary Beth Pilecki-Simko and Tom Giunta vs. The ChubbInstitute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc.**

Dear Sir/Madam::

Enclosed please find an original and two copies of a Complaint and Civil Cover Sheet. Also enclosed is a diskette containing the aforementioned pleadings in PDF format.

Pursuant to the Qui Tam provisions of 31 U.S.C. 3739 - 3733, **please file the complaint in camera and UNDER SEAL until the Court orders othewise.**

Please return a stamped copy of the Complaint in the attached envelope.

I have also enclosed a check in the amount of $350.00 for filing fees. Thank you for your cooperation in this matter.

Very truly yours,

Michael S. Green
Attorney for Relators

Enclosure
cc: Edward Heyburn, Esq.

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United States of America, and ex rel. Mary Beth Pilecki-Simko and Tom Giunta,

**DEFENDANTS**

The Chubb Institute, The Chubb Corporation, Chubb American Service Corporation and High-Tech Institute, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Morris County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael S. Green, Esq., Green & Pagano, LLP, 86 Washington Ave. Milltown, New Jersey, 08850, Tel: 732-390-0480

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
31 U.S.C. 3729-3733

Brief description of cause:
False Claims, unjust enrichment by defendants of Title IV/HEA student loans and/or grants.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
08/01/2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**GREEN & PAGANO, LLP**
**MICHAEL S. GREEN, ESQ. (MSG - 2204)**
86 Washington Avenue
Milltown, New Jersey 08850
Tel: (732) 390-0480

**LAW OFFICES OF ED HEYBURN**
**ED HEYBURN, ESQ.  (ED - 8077 )**
37 Robbinsville-Allentown Road
Robbinsville, New Jersey 08691
Tel: (609) 259-7600

**ATTORNEYS FOR RELATORS**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (NEWARK DIVISION)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, and**<br>**ex rel. MARY BETH PILECKI-SIMKO and**<br>**TOM GIUNTA,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No.** |
| | : | |
| **v.** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **THE CHUBB INSTITUTE,** | : | |
| **THE CHUBB CORPORATION,** | : | **COMPLAINT** |
| **CHUBB AMERICA SERVICE CORPORATION** | : | **AND DEMAND FOR** |
| **and HIGH-TECH INSTITUTE, INC.** | : | **JURY TRIAL** |
| | : | |
| **Defendants.** | : | |
| | : | |

Plaintiffs, United States ex rel. Mary Beth Pilecki-Simko and Tom Giunta individually, by

their undersigned attorneys,  and complaining of the defendants The Chubb Institute, The Chubb

Corporation, Chubb America Service Corporation and High-Tech Institute, Inc. (hereinafter "Chubb" or the "Defendants"), respectfully allege as follows.

## JURISDICTION AND VENUE

1.     This is a civil action brought by the United States for treble damages and penalties under the False Claims Act, as amended, 31 U.S.C. §§ 3001 to 3308, and under the common law theories of unjust enrichment and payment by mistake. Relators Mary Beth Pilecki-Simko and Tom Giunta (hereinafter the "Relators"), acting on behalf of the United States, brings this civil action under the qui tam provisions of the False Claims Act, as amended in 1986.  Relators Mary Beth Pilecki-Simko and Tom Giunta also seek recovery against the defendants.

2.     This court has subject matter jurisdiction over this action pursuant to 31U.S.C. §§ 3730 and 3732 (a), and pursuant to 28 U.S.C. § 1345.

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c) and under 31 U.S.C. § 3732(a).  Defendants do business in this district at all times material to this action.  The claims set forth in this complaint arose in this district.

## PARTIES

4.     Plaintiffs are the United States of America ("United States") and Relators Mary Beth Pilecki- Simko and Tom Giunta.

5.     The plaintiff, Mary Beth Pilecki-Simko (the "Relator"), resides at 71 Ochs Avenue, Milltown, New Jersey 08850.  The plaintiff Tom Giunta (the "Relator"), resides at 14 Algonquin Drive, Marlboro, New Jersey 07746.  Relator Mary Beth Pilecki-Simko worked at The Chubb Institute at the North Brunswick Campus from November 1997 to January 2005 was employed as a Career Services Representative.  Relator Tom Giunta worked at The Chubb Institute

2

at the North Brunswick Campus from July 31, 1995 to January 15, 2005 employed as Director of Admissions.

6.      Defendants The Chubb Institute, The Chubb Corporation and Chubb America Service Corporation (hereinafter collectively, "Chubb Institute" or "Chubb") is a technical career training institute. Chubb America Service Corporation's principal place of business is at 8 Sylvan Way, Parsippany, New Jersey 07054.   The Chubb Institute was a subsidiary of The Chubb Corporation, an insurance company and New Jersey corporation, with its principal place of business at 15 Mountain View Road, Warren New Jersey.   The Chubb Institute was sold by The Chubb Corporation to defendant High-Tech Institute, Inc. in and around September of 2004.  The Chubb Institute's website is www.chubbinstitute.com.

7.      Defendant High-Tech Institute, Inc. (hereinafter "HTI") is a family of schools offering Associate's and Bachelor's degrees and technical training.  HTI purchased The Chubb Institute in and around January 2004.  HTI's principal place of business is 1515 E. Indian School Road, Phoenix, Arizona 85014.  Its website is www.hightechinstitute.com.

8.      As required under the False Claims Act, 31, U.S.C. § 3730 (a) (2), the Relators have provided the Attorney General of the United States and the United States Attorney for the District of New Jersey, Newark Division, with a statement of all material evidence and information related to the complaint. This disclosure statement supports the allegations that the defendants since in and around November 2001, on a nationwide basis: (a) knowingly caused to be presented to an employee of the United States Government false or fraudulent claims for payment or approval as regards Title IV/HEA federal student loans and/or grants; (b) knowingly made, used or caused to be made or used, false records or statements to get a false or fraudulent claim paid or approved by the Government

3

as regards Title IV/HEA federal student loans and/or grants; (c) conspired to defraud the Government by getting false or fraudulent claims allowed or paid as regards Title IV/HEA federal student loans and/or grants.

## FACTUAL ALLEGATIONS/INTRODUCTION

### I) FEDERAL STATUTES, REGULATIONS AND STANDARDS OF ACCREDITATION GOVERNING CHUBB'S PARTICIPATION IN TITLE IV/HEA PROGRAMS

9.      Upon information and belief, the overwhelming majority of Chubb's students apply for and receive federal Title IV/HEA program assistance to pay for Chubb's tuition and school related expenses.

10.     Title IV/HEA programs are governed by the Higher Education Act of 1965, 20 U.S.C. 1001 et seq. and its regulations and are loans and/or grants to assist in making available the benefits of postsecondary education to eligible students in institutions of higher education. (See 20 U.S.C. 1070).

11.     Title IV/HEA program assistance federal loans and/or grants include Pell Grants, Perkins Loans, Federal Stafford, Federal PLUS, Direct Subsidized, Direct Unsubsidized, or Direct PLUS Loan disbursements.

12.     In order for Chubb's students to apply for and obtain Title IV/HEA program assistance, Chubb must be an eligible institution and be permitted to participate in the programs by the Secretary of Education. (20 U.S.C. 1070)

13.     To be an eligible institution and be permitted to participate in Title IV/HEA programs, Chubb must be an institution of higher education (20 U.S.C. 1001 (a) and (b), 20 U.S.C. 1002(a) and (b)) and Chubb must enter into a program participation agreement with the Secretary

4

of Education. (See 20 U.S.C. 1094, Sec. 487 of Title IV, 34 CFR §668.14. Program Participation).

14.     Chubb, by entering into a program participation agreement with the Secretary of Education, agrees that it will comply with all statutory provisions of or applicable to Title IV of the HEA, and all applicable regulatory provisions prescribed under that statutory authority. (See 34 CFR §668.14(b) (1)).

15.     Chubb, by entering into a program participation agreement, agreed to provide accurate information to the nationally recognized accrediting agency that accredits the institution or any of the institution's branch campuses, other locations or educational programs.  (See 34 CFR §668.14 (b)(4), 34 CFR §602.1 et seq., Authority: 20 U.S.C. 1099b).

16.     The Accrediting Commission of Career Schools and Colleges of Technology (hereinafter ACCSCT) is recognized by the United States Department of Education as a private, non-profit, independent accrediting agency of postsecondary career schools and colleges. (See 34 CFR §602.1 et seq., Authority: 20 U.S.C. 1099b).  By applying for and receiving accreditation, a school accepts the obligation to demonstrate compliance with the "Standards of Accreditation."  See ACCSCT Website - www.accsct.org.

17.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb is not permitted to make any misrepresentations regarding the nature of its educational program, its financial charges or the employability of its graduates. (See Subpart F - Misrepresentation, 34 CFR §668.71,  §668.72, §668.74, Authority: 20 U.S.C. 1094)

18.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable  to Chubb as an institution of higher education participating in Title IV/HEA programs,

Chubb has to provide a statement that certifies the eligibility of any student to receive a loan under Title IV/HEA. (See 20 U.S.C. 1087d, Section 454(a)).

19.    Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb acts as a fiduciary in the administration of Title IV/HEA programs. (34 CFR §668.82, Standard of Conduct.)

20.    Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, the Secretary of Education may impose a fine of up to **$27, 500 per violation** on a participating institution that (Emphasis added):

> (i) violates any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA; or
>
> (ii) substantially misrepresents the nature of its educational program, financial charges or the employability of its graduates. (34 CFR §668.82. Fine Proceedings, Authority: 20 U.S.C. 1994)

21.    Pursuant to ACCSCT's published "Standards of Accreditation" (Revised February 15, 2006):

> a..    A school must be in compliance with all federal and state requirements. (Section I - Criteria for Eligibility, D. Legal and Disclosure Requirements)
>
> b.    The school's recruitment efforts must attract students who are qualified and likely to complete and benefit from the training provided by the school and not simply obtain enrollments. (Section IV - Student Recruitment, Statement of Purpose.)
>
> c.    A school shall ensure that its recruiters do not make false or misleading statements about the school, its personnel, its training, its services, or its

accredited status. (Section IV - Student Recruitment, Statement of Purpose. A.4.)

d.      A school may not make explicit or implicit promises of employment to prospective students. (Section IV - Student Recruitment, Statement of Purpose. A.9.)

e.      A school should only admit those students who are capable of successfully completing the training offered. Admission decisions are based on fair, effective, and consistently applied criteria that enable the school to make an informed judgment as to an applicant's ability to achieve the program's objectives. (Section V - Admission Policies and Practices. Statement of Purpose.)

f.      The school must consistently and fairly apply its admission standards. It must determine that applicants meets such standards and are capable of benefitting from the training offered. (Section V - Admission Policies and Practices. 2. )

g.      Graduate employment assistance must be made available to students and the extent and nature of employment assistance services must be as claimed by the school. _The school must maintain verifiable records of each graduate's initial employment for five years. Any statement regarding the percentage of graduate employment, e.g. annual employment rates of graduates, must be based upon these verifiable records._ (Section VI - Student Services. C. Graduate Employment Assistance and Records. 1 and 3.) (Emphasis added)

h.      A school must establish that a high proportion of its students attend class, successfully progress through and complete their program of study, and obtain employment in the field for which trained. A school must establish and consistently apply criteria which provide an objective evaluation of the student's progress toward attaining the program's specific educational objectives. (Section VII - Student Progress, Statement of Purpose).

i.      The school must terminate any student who is unable to satisfactorily achieve the knowledge and skills required by the occupation for which the training is intended. Successful program completion is based upon satisfactory achievement of the required knowledge and skills. (Section VII - Student Progress. B. Satisfactory Progress. 5. and 7.)

j.      A branch campus is a separate facility established by a main school that is geographically apart from the main school. The management and supervision oversight of the branch campus must be carried out by the same ownership

7

and management that controls the main school. (Section X - Separate Facilities. 1. Branch Campus)

k.   A main school is responsible and accountable to the Commission for its separate facilities. (Section X - Separate Facilities. B. Branch Campus).

l.   Effective as of February 15, 2006, for all programs, the average rate of employment that demonstrates an acceptable student achievement is 83%. The minimum required employment rate is 70%. (Appendix II - Student Achievement Rates. Required Employment Rate.)

## II) CHUBB'S VIOLATIONS OF THE FALSE CLAIMS ACT

22.   Relators allege that Chubb violated the False Claims Act and were unjustly enriched by:

(i)   causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs after Chubb's violations of federal statutes and regulations governing the participation of institutions of higher education in Title IV/HEA programs made Chubb ineligible to receive Title IV/HEA program funds for its students. (Emphasis added) Chubb violated governing Title IV/HEA federal law and regulations, its Title IV/HEA program participation agreement with the Secretary of the Department of Education and the standards of accreditation of its nationally recognized accrediting agency, the Accrediting Commission of Career Schools and Colleges of Technology (ACCSCT), through its multiple misrepresentations, detailed herein, to its students, the Secretary of Education and the ACCSCT.

(ii)   causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs after Chubb misrepresented to them the nature of Chubb's programs and externships, the employability of its graduates and its employment placement services and placement numbers. (Emphasis added)   The students, in turn,  relied on these

8

substantial misrepresentations to their detriment when deciding to enroll at Chubb and apply for Title IV/HEA financial aid (See 34 CFR §668.71, Authority: 20 U.S.C. 1094).

      (iii)    causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs after <u>Chubb misrepresented</u> to the students whether they met Chubb's own <u>admission criteria and/or whether the students could benefit from the education or training offered</u>. (Emphasis added)  Chubb made these misrepresentations to the students, in violation of ACCSCT standards of accreditation, by: (1) changing admission test scores, some from failing grades to passing grades; and (2) admitting students that were not able to speak and write English fluently as required by Chubb's own admission criteria.  The students, in turn, relied on these substantial misrepresentations to their detriment when deciding to enroll at Chubb and apply for Title IV/HEA financial aid (See 34 CFR §668.71, Authority: 20 U.S.C. 1094).

      (iv)    causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs of students that were ineligible to receive Title IV/HEA program funds.  The <u>students were ineligible, including but not limited to, because they</u> "<u>did not make satisfactory academic progress toward completing their program of study</u>" in violation of 20 U.S.C. 1091 (c), 34 CFR §668.32 (f) and ACCSCT standards of accreditation.  (Emphasis added)  Relators allege that teachers and staff were pressured by Chubb to give higher grades to students that were not making satisfactory progress so that Chubb would obtain the Title IV/HEA program funds.  Chubb's management also made "professional judgments" admitting and allowing students that were ineligible for Title IV/HEA program assistance to apply for Title IV/HEA programs even though they were illegal non-citizens, did not have a valid social security number, did not comply with the U.S. Selective Service registration requirements and/or did not have a high school diploma or G.E.D.

9

Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).

(v)     Chubb was, as a result of its misrepresentations and fraud, unjustly enriched and paid by mistake of fact when it received monies from Title IV/HEA programs.

### III) CHUBB INSTITUTE - HISTORICAL BACKGROUND

23.     The Chubb Institute is a technical career training institute.  They have eight campuses in Illinois, New Jersey, New York, Pennsylvania and Virginia.  The are four school sites in New Jersey and two in New York..  The New Jersey schools are located in Cherry Hill, Jersey City, North Brunswick and Parsippany.  The New York schools are located in New York City and Westbury.

24.     The Chubb Institute has been open for 30 years.  On its own website regarding the beginning of the Chubb Institute it states, "In 1970, one of the largest insurance organizations in the world needed qualified people to run its multimillion dollar computer center.  Not able to find skilled employees, it created its own training center.  This proved so successful that companies like IBM, Johnson & Johnson and UPS soon asked The Chubb Institute to provide them with computer professionals.  And so The Chubb Institute was born."

25.     "In 2004, The Chubb Institute was acquired by High-Tech Institute (HTI), which added the Chubb Institute's eight locations to its list of 17 HTI campuses throughout the United States...   Since 1970, the Chubb Institute  has "trained more than 40, 000 in a wealth of fields that have led to promising careers."  Chubb Website.

26.     The Chubb Institute offers the following programs: Computer Networking & Security, Graphic Design & Animation, Massage Therapy, Medical Administration, Medical Assistant, Medical Billing & Coding and Surgical Technologist.

10

## IV) CHUBB'S REPRESENTATIONS ABOUT THEIR SCHOOL
## CAREER SERVICES

27.     Chubb states on their website that the Medical Assistant program and Medical Billing & Coding program both "conclude with an externship in a medical facility or medical office or hospital, where the student will practice the skills they learned in the classroom."

28.     The Chubb Institute represents that graduates work for a number of top corporations, including American Express Bank, Blue Cross/Blue Shield, State Farm Insurance, Health Management Systems and others.  (See Chubb website).

29.     Chubb states on their website in the "Top 10 Reasons to Enroll" that Chubb has:

"3) Fast, Convenient, Quality Training - Programs are designed to get you the sills you need to succeed in the shortest amount of time possible."

"5) Business Advisory Boards - The Chubb Institute partners with the local business community and seeks its input when developing our curricula.  The end result is training programs that are practical, job relevant and meet the needs of today's businesses.

"6) Career Services Assistance - The Chubb Institute's ultimate goal is to train its graduates for effective careers.  Our full-time career Services staff assists students in good standing in developing life-long job search skills."

"8) Financial Assistance for Those Who Qualify - We offer a variety of financing options as well as a trained, full-time staff to help you receive the aid for which you qualify."

30.     Chubb states on their website in addressing high school students that "Let one of our Admissions Representatives walk you through the entire application process and figure out how much financial aid you qualify for. We're here for you-before you enroll, when you're in school, and after you graduate."

31.     Chubb states on their website regarding "providing opportunities" that, "When you graduate from The Chubb Institute, you'll be a marketable professional who's qualified for a long-term career. We know what today's employers are looking for, so we make sure your skills match their needs. Successful, growing companies are all looking for people who are trained in the programs we teach. People like you."

32.     Chubb states on their website regarding "Graduate Placement Assistance" that, "After you graduate, we'll do everything we can to help you find a position in your career field."

33.     Chubb states on their website regarding "The Admissions Process, best of all, an Admissions Representative will walk you through the entire process from start to finish. We'll help you pick the program that's right for you, clearly explain everything you need to submit, and more. We'll even have a financial aid representatives sit down with you and discuss the amount and type of Federal Financial Aid that may be available to you.

### CHUBB'S FINANCIAL AID PROCESS REPRESENTATIONS

34.     Chubb states on their website regarding Financial Aid, "To help students achieve their financial goals, we make Financial Aid available to those who qualify. Those that do can apply for loans, grants and scholarships! Finding out if you qualify is easy because we've made the Financial Aid process at The Chubb Institute as simple as possible."

35.     Chubb states on their website as regards the "Financial Aid Process", "To help

12

students achieve their financial goals, we make Financial Aid available to those who qualify. If you do qualify, you can apply for loans, grants, scholarships and more!" "Here's how the Financial Aid process works: (1) Make sure you are eligible for Financial Aid, Generally speaking, you will be eligible for Financial Aid if you: - Are enrolled as a regular student in an eligible program. Make satisfactory academic progress toward completing your program of study. 2) Complete the Enrollment Agreement. Before we can help you determine the Financial Aid you may qualify for, you must enter your Admissions Representative and enroll in the school. 3) Before meeting with a Financial Advisor, you'll be given a Financial Aid packet, which you should complete prior to this meeting. **This packet contains the Free Application for Federal Student Aid (FAFSA). The federal government uses this to determine the amount of aid you will receive.** During this meeting, the Financial Aid Advisor will review your application for completeness and accuracy, and will then perform a calculation to estimate how much aid, if any, you are eligible to receive. (Emphasis added)

### CHUBB'S ADMISSION PROCESS

36.     Chubb states on their website as regards, "The Admissions Process", Here's how the Admissions process works:

1) "Make sure you meet our admission requirements: **You must be able to speak and write English fluently. You must possess a minimum of a high school diploma or the equivalent and must provide proof of high school graduation.**" (Emphasis added)

2) "Complete an Application for Admissions and participate in on on-site campus tour and interview. Interviews are conducted by an Admission Representative to review the candidate's education background, work experience, **financial plans** and career preferences.

13

The Admissions Representative will also make sure the candidate's admissions requirements are met.

3) "Achieve a passing score on our Admissions Evaluation. This evaluation, which requires no preparation, helps the school measure a candidate's ability to perform in school and on the job. **Once you meet the admissions criteria and complete the admissions process, you are accepted and may begin to enroll in the school.**" (Emphasis added)

37.    Chubb states on their website as regards, "Admissions Frequently Asked Questions": "What happens after I'm accepted?  Candidates who have met the admissions criteria and have completed the admissions process may be referred to the Executive Director or a designated school official for acceptance....Enrollment consists of signing an Enrollment Agreement and Payment Agreement (for non-financial aid applicants) and paying a registration fee....The exam results remain valid for one year from the test date....Students are responsible for any additional charges incurred for repeated courses..."

## CHUBB'S REPRESENTATIONS ABOUT ITS CURRICULUM

38.    In Chubb's website states on its "Mission Statement" in "Our Commitment to Our Students" that:

"Our goal is to provide the highest quality training that enables a person to start or enhance their career...At The Chubb Institute, we constantly meet with major employers and industry leaders to understand their job needs.  We then develop the curriculum that trains people in these needed skills to fulfill these job requests. The result is that The Chubb Institute's training is always practical and job relevant, resulting in a tremendous demand for our graduates."

14

39.     Chubb states on their website as regards the Chubb Institute Programs, "No matter which of our programs you choose, you'll complete your Diploma in a little more than one year, or less.  Get the training you need, then get the job you want."

40.     Chubb states on their website as regards their "Massage Therapy Diploma Program" under "What Does Our Massage Therapy Program Offer You?, that it offers a, "Supervised Clinic in a clinical setting."

41.     Chubb states on their website as regards their "Medical Assistant Diploma Program" under "What Does Our Medical Assistant Program Offer You?, that it offers, "An externship in a medical facility."

42.     Chubb states on their website as regards their "Medical Billing & Code Diploma Program" under "What Does Our Medical Billing & Coding Program Offer You?, that it offers an, "Externship in a medical office or a hospital."

43.     Chubb states on their website as regards their "Surgical Technologist Diploma Program" under "What Does Our Surgical Technologist Program Offer You?, that it offers, "An externship at a medical facility."

## V) CHUBB'S MISREPRESENTATIONS - EMPLOYMENT PLACEMENT NUMBERS, ADMISSION CRITERIA AND THE ACADEMIC PROGRESS OF ITS STUDENTS

44.     As detailed below, since in and around November 2001, on a nationwide basis, Chubb made misrepresentations to prospective students, enrolled students, the Secretary of Education and its accrediting agency, the ACCSCT, that violated its participation agreement with the Secretary of Education that allowed it to receive Title IV/HEA monies. These misrepresentations not only caused the filing of false claims but also made Chubb ineligible to receive Title IV/HEA

monies.   Therefore, any claim made by students as a result of Chubb's misrepresentations were caused to be made or presented by Chubb and were false or fraudulent.

## CHUBB MADE MISREPRESENTATIONS TO PROSPECTIVE STUDENTS ABOUT JOB PLACEMENT

45.   Relators allege that since in and around November 2001 on a nationwide basis, Chubb has misrepresented to prospective students placement numbers and the ability for Chubb's Career Services to make placements for students.

46.   Chubb misrepresented their job placement numbers to the accreditation agencies (ACCSCT - Accrediting Commission of Career Schools and Colleges of Technology) so that Chubb's students could qualify for federal loans and/or grants.

47.   The ACCSCT requires 70% job placement overall for Chubb.   During admission interviews, Admission Representatives would orally convey that the school's placement numbers were 85-90%.  However, these numbers were based on false placement data.

48.   An "Enrollment Agreement" includes a statement that is executed by the student that they were not guaranteed that Chubb would place them in a job.   However, Admission Representatives did in fact make oral guarantees that prospective students would be placed in a job by Chubb.

49.   A placement is employment gained through the efforts of career services staff of a student in a job where they would have had to come to the school to learn the skill to do the job. Students were counted as placed when they were in jobs unrelated to their curriculum.  Students placed in menial jobs, such as administrative tasks, were counted as being placed in jobs related to their curriculum e.g. computer programming, website design.

16

50.   This process often called "career pathing" artificially boosted Chubb's placement numbers and was a misrepresentation to students and a fraud upon the accreditation agencies and the government.

51.   Chubb also misrepresented to prospective students for Medical Billing and Coding and other curriculum that included externships that Chubb had a placement referral base for these curriculum and externships when in fact they did not or did not have an adequate placement referral base.

52.   Chubb misrepresented their employment placement numbers and the externships of their programs to increase enrollment numbers, fraudulently obtain accreditation and obtain Title IV/HEA funds for Chubb.

## CHUBB MADE MISREPRESENTATIONS TO PROSPECTIVE STUDENTS, THE ACCSCT AND THE DEPARTMENT OF EDUCATION ABOUT ITS ADMISSIONS CRITERIA

### Chubb Changed Admission Test Scores from Failing to Passing

53.   Chubb knowingly admitted unqualified students that did not achieve a passing score on Chubb's Entrance Assessment Test in violation of their own admission criteria and ACCSCT standards.

54.   Relators allege that Chubb employees changed the admission test scores of unqualified students such that failing grades were changed to passing grades and/or low passing grades were made higher.  This process was known as applying "pixie dust" to the tests.

55.   Chubb admission personnel changed the tests to increase their enrollment numbers and obtain Title IV/HEA funds for Chubb.

56.   Chubb also changed the test scores as a marketing ploy to convince prospective

17

students that they could succeed at Chubb and in the academic program of their choice.

**Chubb Admitted Unqualified Students That Could Not Speak or Write English Fluently**

57.    Chubb's own admission criteria require that enrolling students speak and write English fluently.

58.    Chubb admitted foreign and other students that could not speak or write English fluently.

59.    Chubb admitted students that were accompanied by a relative who translated for them during the admissions process and clearly indicated that the student could not speak or write English fluently.

60.    Chubb admitted students that were not fluent in English to increase their enrollment numbers and obtain Title IV/HEA funds for Chubb.

## CHUBB MISREPRESENTED TO STUDENTS AND THE DEPARTMENT OF EDUCATION THAT STUDENTS WERE MAKING SATISFACTORY ACADEMIC PROGRESS TOWARD COMPLETING THEIR PROGRAM OF STUDY

61.    Pursuant to 20 U.S.C. 1091, 1094 and 34 CFR §668.32, Subpart C - Student Eligibility, in order for students to be eligible for Title IV/HEA programs their institution of higher education had to certify that they were making satisfactory academic progress toward completing their program of study.

62.    Chubb students that had grades that would make them ineligible for Title IV/HEA programs had their grades fraudulently raised by Chubb so that they would be eligible.

63.    Relators allege that teachers were pressured by management to change the grade curving of classes such that more students would pass so that Chubb would have a higher retention rate and would be allowed under federal and state guidelines to receive more of the tuition monies

18

paid by students.

64.     Chubb certified that students were making satisfactory progress toward completing their program of study when they were not, so that the students would be eligible for Title IV/HEA programs.  Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).  In this manner, Chubb caused the filing and presentation of false claims to the government and violated the False Claims Act.

## VI) CHUBB KNOWINGLY CAUSED THE FILING OF FALSE CLAIMS FOR STUDENTS THAT WERE INELIGIBLE FOR TITLE IV/HEA ASSISTANCE

65.     In order for students to be eligible for federal loans and/or grants, the federal government requires of the student (See also 20 U.S.C. 1091, 1094 and 34 CFR §668.32, Subpart C - Student Eligibility), according to Chubb's own website, the following:

   a.     be a U.S. citizen or an eligible non-citizen
   b.     have a social security number
   c.     have a high school diploma or GED
   d.     have complied with U.S. Selective Service registration requirements
   e.     sign required certification forms
   f.     have never been convicted of a drug offense
   g.     **make satisfactory academic progress toward completing their program of study.**

66.     Chubb's Financial Aid Advisors put a financial aid package together for the student and submits it to the federal government.

67.     Prospective students that did not meet the eligibility requirements had their financial aid "package" sent to Chubb's national headquarters in Parsippany, New Jersey where a "professional judgment" was made and the local campus e.g. North Brunswick's financial advisor, was called and told to submit the financial aid forms to the federal government despite the fact that

19

the students did not meet the eligibility requirements.

68.     Chubb's financial aid process allowed Chubb to obtain federal loan monies from students that would otherwise be ineligible to obtain those funds.

69.     Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).

70.     Chubb knowingly conspired to present false claims and use false records to obtain payments from federal loans and/or grants from the federal government.

## VII) CHUBB'S MISREPRESENTATIONS AND FRAUD CAUSED FALSE OR FRAUDULENT TITLE IV/HEA CLAIMS TO BE MADE AND TUITION MONIES TO BE PAID TO CHUBB

71.     Relators allege that since in and around November 2001, practices at The Chubb Institute as regards the admission, teaching and job placement of students knowingly caused and supported a fraud upon the U.S. Government.  Chubb students, that were (1) not qualified to be admitted to Chubb; and/or (2 )not eligible for Title IV/HEA program assistance; and/or (3) relied on misrepresentations when enrolling at Chubb which made Chubb ineligible to receive Title IV/HEA monies, applied for and received Title IV/HEA program monies with the fraudulent support and assistance of The Chubb Institute.  Chubb's misrepresentations and fraud not only caused the filing of false claims but also made Chubb ineligible to receive Title IV/HEA monies.   Therefore, any claim made by students as a result of Chubb's misrepresentations were caused to be made or presented by Chubb and were false or fraudulent.

72.     Specifically, the relators allege that since November 2001, on a nationwide basis:

a.     students that were not qualified for admission to The Chubb Institute were admitted to Chubb and assisted by Chubb in obtaining federal loans and grants;

20

b.   students were admitted to The Chubb Institute and fraudulently allowed to complete training curriculum despite the fact that they were not competent to do so, enabling The Chubb Institute to keep all or the majority of the federal loan monies of the students;

c.   students that did not meet the federal government's eligibility requirements for application and qualification for federal loans were fraudulently assisted and supported in obtaining federal loans by Chubb;

d.   Chubb fraudulently misrepresented their job placement numbers to students when students sought admission to Chubb and misrepresented Chubb's ability to place students for specific curricula such as Medical Billing and Coding;

e.   Chubb fraudulently misrepresented their job placement numbers to prospective students and their accreditation agency ACCSCT (Accrediting Commission of Career Schools and Colleges of Technology), to increase their enrollment and so that Chubb's students could qualify for federal loans and grants.

**FIRST CLAIM**
**(Violation of 31 U.S.C. § 3729 (a) (1)**
**False Claims Act - False Claims)**

73.   The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

74.   On information and belief, the defendants presented, or caused to be filed, with the United States government claims with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate, that the claims were inaccurate or inappropriate and false and caused payments for the claims to be made by the United States government.

75.   By reason of the violation of 31 U.S.C. § 3729(a)(1) defendants have knowingly or recklessly damaged the United States government in an as yet undetermined amount.

**SECOND CLAIM**

21

**(Violation of 31 U.S.C. § 3729(a)(2)**
**False Claims Act - False Record or Statements)**

76.    The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

77.    On information and belief, defendants presented, or caused to be filed, with the United States government claims with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate, that the claims were inaccurate or inappropriate and false and caused payments for the claims to be made by the United States government.

78.    By reason of the violation of 31 U.S.C. § 3729(a)(2) defendants have knowingly or recklessly damaged the United States government in an as yet undetermined amount.

**THIRD CLAIM**
**(Violation of 31 U.S.C. § 3729(a)(3)**
**False Claims Act - Conspiracy)**

79.    The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

80.    The defendants in performing the acts set forth above, conspired to defraud the United States government in violation of 31 U.S.C. § 3729 9a)(3) by getting false or fraudulent claims allowed or paid to the damage of the United States' government.

81.    By virtue of the acts described above and others, defendants knowingly conspired to defraud the United States by getting false and/or fraudulent claims paid by the United States.

82.    The United States paid these claims because of defendants' fraudulent misrepresentations and omissions.

22

## FOURTH CLAIM
## UNJUST ENRICHMENT AND DISGORGEMENT

83.    The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

84.    As a result of the conduct described in this Count, the United States paid monies to defendant for which the United States received no benefit and to which defendant was not entitled.

85.    In consequence of the acts set forth in this Count, defendant has been unjustly enriched at the expense of the United States.

86.    The United States is entitled to the amount of defendant's unjust enrichment as restitution.

## FIFTH CLAIM
## PAYMENT BY MISTAKE OF FACT

87.    The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

88.    As a result of the conduct described in this Count, the United States paid or approved the claims submitted by defendant or caused to be submitted by defendant under the erroneous belief that the services provided by defendant were properly payable.

89.    At the time such payments were made, the United States was unaware of defendants' wrongful conduct.  Had the United States known that defendant was not entitled to receive reimbursement or payment, the United States would not have approved payment of such funds.

90.    The United States' erroneous beliefs were material to the amount of money the United States paid or approved for defendants' claims or those claims caused to be made by

23

defendant.

91.     Because of these mistakes of fact, the defendant received money to which it was not entitled.

92.     By reason of the overpayments described above, the United States is entitled to damages in the amount of the overpayments.

## PRAYER FOR RELIEF BY PLAINTIFF UNITED STATES

WHEREFORE, plaintiff United States of America prays that:

1.     With respect to Count I-III, that judgment be entered in favor of plaintiff United States and against defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc. for treble the United States' damages and for civil penalties of between $5,000 and $10,000 for each false claim, plus interest and costs;

2.     With respect to Count IV, that judgment be entered in favor of plaintiff United States and against defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc. for restitution of all funds by which defendants have been unjustly enriched;

3.     With respect to Count V,  that judgment be entered in favor of plaintiff United States and against defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc. for restitution of all funds paid by mistake by federal agencies, or through the erroneous acts of its agents; and

4.     Granting such other relief as the Court may deem just and proper.

24

## PRAYER FOR RELIEF BY PLAINTIFF-RELATORS
## MARY BETH PILECKI-SIMKO AND TOM GIUNTA

WHEREFORE, plaintiff relators Mary Beth Pilecki-Simko and Tom Giunta pray for judgment entered against the defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc., each of them jointly and severally, as follows:

1.  In an amount, presently undeterminable, on the First, Second and Third Claims, for violation of 31 U.S.C. § 3729 (a)(1), (2) and (3) sum duly trebled in addition to a fine of not less than $5,000 per violation and not more than $10,000 per claim, together with attorney's fees and costs;

2.  On Count Four and Five, judgment against the defendants named herein, jointly and severally, for the damages sustained, all profits earned by virtue of their wrongdoing, all statutory damages where permitted by law, punitive damages where permitted by law in an amount sufficient to punish and deter, pre-judgment interest, costs, an accounting of all funds paid and/or received by the defendants, and all other proper relief;

3.  For an appropriate percentage of the proceeds collected by the United States pursuant to 31 U.S.C. §§ 3729 to 3733 under Counts I-III and Counts IV-V;

4.  For an amount for reasonable expenses necessarily incurred by the relators in the prosecution of this action;

5.  For all reasonable attorney's fees and costs which the relators incurred in connection with these proceedings;

6.  In addition, plaintiffs pray for such further and additional relief at law or in equity that this Court may deem appropriate or proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, United States ex. rel. Mary Beth Pilecki-Simko and Tom Giunta individually, demand a trial by jury on all issues so triable.

Dated: 7/31/06

GREEN & PAGANO, L.L.P.

By: _____
    MICHAEL S. GREEN, ESQ.
    86 Washington Avenue
    Milltown, New Jersey 08850
    Tel: (732) 390-0480
    Fax: (732) 390-0481

Dated: 7/31/06

LAW OFFICES OF ED HEYBURN

By: _____
    ED HEYBURN, ESQ.
    37 Robbinsville-Allentown Road
    Robbinsville, New Jersey 08691
    Tel: (609) 259-7600
    Fax:(609) 259-7303

26