**GREEN & PAGANO, LLP**
**MICHAEL S. GREEN, ESQ. (MSG - 2204)**
522 Route 18, P.O. Box 428
East Brunswick, New Jersey 08816
Tel: (732) 390-0480

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
**GARY S. GRAIFMAN (GSG - 2276)**
210 Summit Avenue
Montvale, New Jersey 07645
Tel: (201) 391-7000

**LAW OFFICES OF EWARD HARRINGTON HEYBURN, PC**
**EDWARD HARRINGTON HEYBURN, ESQ.  (EHH - 8077 )**
37 Robbinsville-Allentown Road
Robbinsville, New Jersey 08691
Tel: (609) 259-7600
**ATTORNEYS FOR RELATORS**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (NEWARK DIVISION)

| | |
|---|---|
| **UNITED STATES OF AMERICA, and**<br>**ex rel. MARY BETH PILECKI-SIMKO and**<br>**TOM GIUNTA,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CHUBB AMERICA SERVICE CORPORATION:**<br>**THE CHUBB INSTITUTE,**<br>**THE CHUBB CORPORATION,**<br>**and HIGH-TECH INSTITUTE, INC.**<br><br>**Defendants.** | **Case No. 06-3562 (HAA)**<br><br>**CIVIL ACTION**<br><br>**SECOND AMENDED**<br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL** |

Plaintiffs, United States ex rel. Mary Beth Pilecki-Simko and Tom Giunta individually, by their undersigned attorneys,  and complaining of the defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc. (hereinafter "Chubb" or the "Defendants"), respectfully allege as follows.

## JURISDICTION AND VENUE

1.      This is a civil action brought by the United States for treble damages and penalties under the False Claims Act, as amended, 31 U.S.C. §§ 3001 to 3308.  Relators Mary Beth Pilecki-Simko and Tom Giunta (hereinafter the "Relators"), acting on behalf of the United States, brings this civil action under the qui tam provisions of the False Claims Act, as amended in 1986.  Relators Mary Beth Pilecki-Simko and Tom Giunta also seek recovery against the defendants.

2.      This court has subject matter jurisdiction over this action pursuant to 31U.S.C. §§ 3730 and 3732 (a), and pursuant to 28 U.S.C. § 1345.

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c) and under 31 U.S.C. § 3732(a).  Defendants do business in this district at all times material to this action.  The claims set forth in this complaint arose in this district.

## PARTIES

4.      Plaintiffs are the United States of America ("United States") and Relators Mary Beth Pilecki- Simko and Tom Giunta.

5.      The plaintiff, Mary Beth Pilecki-Simko (the "Relator"), resides at 71 Ochs Avenue, Milltown, New Jersey 08850.  The plaintiff Tom Giunta (the "Relator"), resides at 14 Algonquin Drive, Marlboro, New Jersey 07746.  Relator Mary Beth Pilecki-Simko worked at The

2

Chubb Institute at the North Brunswick Campus from November 1997 to January 2005 was employed as a Career Services Representative. Relator Tom Giunta worked at The Chubb Institute at the North Brunswick Campus from July 31, 1995 to January 15, 2005 employed as Director of Admissions.

6.     Defendants The Chubb Institute, The Chubb Corporation and Chubb America Service Corporation (hereinafter collectively, "Chubb Institute" or "Chubb") is a technical career training institute. Chubb America Service Corporation's principal place of business is at 8 Sylvan Way, Parsippany, New Jersey 07054.   The Chubb Institute was a subsidiary of The Chubb Corporation, an insurance company and New Jersey corporation, with its principal place of business at 15 Mountain View Road, Warren New Jersey.  The Chubb Institute was sold by The Chubb Corporation to defendant High-Tech Institute, Inc. in and around September of 2004.  The Chubb Institute's website is www.chubbinstitute.com.

7.     Defendant High-Tech Institute, Inc. (hereinafter "HTI") is a family of schools offering Associate's and Bachelor's degrees and technical training.  HTI purchased The Chubb Institute in and around January 2004.  HTI's principal place of business is 1515 E. Indian School Road, Phoenix, Arizona 85014.  Its website is www.hightechinstitute.com.

8.     As required under the False Claims Act, 31, U.S.C. § 3730 (a) (2), the Relators have provided the Attorney General of the United States and the United States Attorney for the District of New Jersey, Newark Division, with a statement of all material evidence and information related to the complaint. This disclosure statement supports the allegations that the defendants since in and around November 2001, on a nationwide basis: (a) knowingly caused to be presented to an employee of the United States Government false or fraudulent claims for payment or approval as regards Title

3

IV/HEA federal student loans and/or grants; (b) knowingly made, used or caused to be made or used, false records or statements to get a false or fraudulent claim paid or approved by the Government as regards Title IV/HEA federal student loans and/or grants; (c) conspired to defraud the Government by getting false or fraudulent claims allowed or paid as regards Title IV/HEA federal student loans and/or grants.

## FACTUAL ALLEGATIONS/INTRODUCTION

### I) FEDERAL STATUTES, REGULATIONS AND STANDARDS OF ACCREDITATION GOVERNING CHUBB'S PARTICIPATION IN TITLE IV/HEA PROGRAMS

9.      Upon information and belief, the overwhelming majority of Chubb's students apply for and receive federal Title IV/HEA program assistance to pay for Chubb's tuition and school related expenses.

10.     The United States Government awards approximately $6 billion a year to help students obtain their educations at colleges and vocational schools. The federal funds, however, do not go to the students. Instead, the educational institution requests the funds of the United States Department of Education or a third party intermediary lender. The United States Government or the lender wires the funds directly into the institution's accounts. The institutions then credit their students for tuition.

11.     Title IV/HEA programs are governed by the Higher Education Act of 1965, 20 U.S.C. 1001 et seq. and its regulations and are loans and/or grants to assist in making available the benefits of postsecondary education to eligible students in institutions of higher education. (See 20 U.S.C. 1070).

12.     Title IV/HEA program assistance federal loans and/or grants include Pell Grants,

4

Perkins Loans, Federal Stafford, Federal PLUS, Direct Subsidized, Direct Unsubsidized, or Direct PLUS Loan disbursements.

13.     In order for Chubb's students to apply for and obtain Title IV/HEA program assistance, Chubb must be an eligible institution and be permitted to participate in the programs by the Secretary of Education. (20 U.S.C. 1070)

14.     To be an eligible institution and be permitted to participate in Title IV/HEA programs, Chubb must be an institution of higher education (20 U.S.C. 1001 (a) and (b), 20 U.S.C. 1002(a) and (b)) and Chubb must enter into a program participation agreement with the Secretary of Education. (See 20 U.S.C. 1094, Sec. 487 of Title IV, 34 CFR §668.14. Program Participation).

15.     Chubb, by entering into a program participation agreement with the Secretary of Education, agrees that it will comply with all statutory provisions of or applicable to Title IV of the HEA, and all applicable regulatory provisions prescribed under that statutory authority.  (See 34 CFR §668.14(b) (1)).

16.     Chubb, by entering into a program participation agreement, agreed to provide accurate information to the nationally recognized accrediting agency that accredits the institution or any of the institution's branch campuses, other locations or educational programs.  (See 34 CFR §668.14 (b)(4), 34 CFR §602.1 et seq., Authority: 20 U.S.C. 1099b).

17.     The Accrediting Commission of Career Schools and Colleges of Technology and Accrediting Council for Continuing Education and Training (hereinafter ACCSCT and ACCET, respectively) are recognized by the United States Department of Education as private, non-profit, independent accrediting agencies of postsecondary career schools and colleges. (See 34 CFR §602.1 et seq., Authority: 20 U.S.C. 1099b).  By applying for and receiving accreditation, a school accepts

5

the obligation to demonstrate compliance with the "Standards of Accreditation."  See ACCSCT Website - www.accsct.org.

18.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb is not permitted to make any misrepresentations regarding the nature of its educational program, its financial charges or the employability of its graduates. (See Subpart F - Misrepresentation, 34 CFR §668.71, §668.72, §668.74, Authority: 20 U.S.C. 1094)

19.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable  to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb has to provide a statement that certifies the eligibility of any student to receive a loan under Title IV/HEA.  (See 20 U.S.C. 1087d, Section 454(a)).

20.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, Chubb acts as a fiduciary in the administration of Title IV/HEA programs.  (34 CFR §668.82, Standard of Conduct.)

21.     Pursuant to statutory authority, regulatory provisions and standards of accreditation applicable to Chubb as an institution of higher education participating in Title IV/HEA programs, the Secretary of Education may impose a fine of up to **$27, 500 per violation** on a participating institution that (Emphasis added):

> (i) violates any statutory provision of or applicable to Title IV of the HEA, any regulatory provision prescribed under that statutory authority, or any applicable special arrangement, agreement, or limitation entered into under the authority of statutes applicable to Title IV of the HEA; or

6

(ii) substantially <u>misrepresents</u> the nature of its educational program, financial charges or the employability of its graduates. (34 CFR §668.82. Fine Proceedings, Authority: 20 U.S.C. 1994)

22.    Pursuant to ACCSCT's published "Standards of Accreditation" (Revised February 15, 2006):

a..    A school must be in compliance with all federal and state requirements. (Section I - Criteria for Eligibility, D. Legal and Disclosure Requirements)

b.    The school's recruitment efforts must attract students who are qualified and likely to complete and benefit from the training provided by the school and not simply obtain enrollments. (Section IV - Student Recruitment, Statement of Purpose.)

c.    A school shall ensure that its recruiters do not make false or misleading statements about the school, its personnel, its training, its services, or its accredited status. (Section IV - Student Recruitment, Statement of Purpose. A.4.)

d.    A school may not make explicit or implicit promises of employment to prospective students. (Section IV - Student Recruitment, Statement of Purpose. A.9.)

e.    A school should only admit those students who are capable of successfully completing the training offered. Admission decisions are based on fair, effective, and consistently applied criteria that enable the school to make an informed judgment as to an applicant's ability to achieve the program's objectives. (Section V - Admission Policies and Practices. Statement of Purpose.)

f.    The school must consistently and fairly apply its admission standards. It must determine that applicants meet such standards and are capable of benefitting from the training offered. (Section V - Admission Policies and Practices. 2. )

g.    Graduate employment assistance must be made available to students and the extent and nature of employment assistance services must be as claimed by the school. <u>The school must maintain verifiable records of each graduate's initial employment for five years. Any statement regarding the percentage of graduate employment, e.g. annual employment rates of graduates, must be based upon these verifiable records</u>. (Section VI - Student Services. C.

7

Graduate Employment Assistance and Records. 1 and 3.) (Emphasis added)

h.    A school must establish that a high proportion of its students attend class, successfully progress through and complete their program of study, and obtain employment in the field for which trained. A school must establish and consistently apply criteria which provide an objective evaluation of the student's progress toward attaining the program's specific educational objectives. (Section VII - Student Progress, Statement of Purpose).

i.    The school must terminate any student who is unable to satisfactorily achieve the knowledge and skills required by the occupation for which the training is intended.  Successful program completion is based upon satisfactory achievement of the required knowledge and skills. (Section VII - Student Progress. B. Satisfactory Progress. 5. and 7.)

j.    A branch campus is a separate facility established by a main school that is geographically apart from the main school. The management and supervision oversight of the branch campus must be carried out by the same ownership and management that controls the main school.  (Section X - Separate Facilities. 1. Branch Campus)

k.    A main school is responsible and accountable to the Commission for its separate facilities.  (Section X - Separate Facilities. B. Branch Campus).

l.    Effective as of February 15, 2006, for all programs, the average rate of employment that demonstrates an acceptable student achievement is 83%. The minimum required employment rate is 70%.  (Appendix II - Student Achievement Rates.  Required Employment Rate.)

23.    HEA, Title IV, prohibits colleges and universities from providing "any commission, bonus or other incentive payment…" to recruiters based on recruiting activities.  HEA, sections. 487(a) and 487(a)(20). The statutory ban was enacted in 1992 amid reports of numerous institutions enrolling unqualified students, just to receive the federal student-aid funds from the United States Government.  The statutory incentive compensation ban is a core prerequisite for an educational institution's eligibility to request and receive Title IV funds.

8

## II) CHUBB'S VIOLATIONS OF THE FALSE CLAIMS ACT

24.     Relators allege that Chubb violated the False Claims Act by:

(i)     causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs when and/or after Chubb's violations of federal statutes and regulations governing the participation of institutions of higher education in Title IV/HEA programs made Chubb ineligible to receive Title IV/HEA program funds for its students. Chubb violated governing Title IV/HEA federal law and regulations, its Title IV/HEA program participation agreement with the Secretary of the Department of Education and the standards of accreditation of its nationally recognized accrediting agency, the Accrediting Commission of Career Schools and Colleges of Technology (ACCSCT), through its multiple misrepresentations, detailed herein, to its students, the Secretary of Education and the ACCSCT.  (See Exhibits cited below.)

a. Attached as Exhibit "A" are copies of the "Completion and Placement Charts" which contain willfully false statements made by The Chubb Institute and The High Tech Institute.  Defendants submitted these documents to ACCSCT to maintain its accreditation and make their schools eligible for Federal Funds through Title IV/HEA.  The Defendants misrepresented the number of students they placed in jobs related to the students' field of study. The documents were submitted at various dates between 2003 and 2005.

b. On July 9, 2004, Kevin L. Kirkley, Executive Director of The Chubb Institute submitted a "Letter of Assurance" to Elise Scanlon of the ACCSCT.  The letter accompanied a report entitled "The Chubb Institute, Jersey City Campus, Interim Report, July 2004."  The report and letter are false documents and were submitted to the Accrediting Commission of Career Schools and Colleges of Teleology (ACCSCT) knowing that the

9

ACCSCT would rely on these documents and grant The Chubb Institute and The High Tech Institute accreditation. The Chubb Institute and The High Tech Institute submitted these documents with the purpose of falsely obtaining accreditation and falsely entitling them to Title IV/HEA funding from the Department of Education. (While Plaintiffs are aware that similar documents exist as to dates ranging from 2001 to present, these documents are in the control of Defendant The High Tech Institute and cannot be obtained without the discovery process.) Attached as Exhibit "B" is the Kevin L. Kirkley's "Letter of Assurance" to Elise Scanlon of the ACCSCT and the report entitled "The Chubb Institute, Jersey City Campus, Interim Report, July 2004.".

        c. On January 14, 2004 Dennis J. Mascali, Executive Director of Defendant The Chubb Institute submitted and certified a false document to the Accrediting Commission of Career Schools and Colleges of Technology (ACCSCT) which is attached as Exhibit "C." This document was entitled "2003 ACCSCT Annual Report for the Chubb Institute, North Brunswick Campus." This report specifically misrepresented the correct numbers of students placed in their field of study with the purpose of obtaining accreditation from the Accrediting Commission of Career Schools and Colleges of Technology (ACCSCT) and thus entitle The Chubb Institute Title IV/HEA funds from the Federal Government.

        d.. On February 14, 2006, Dana Backhaus, Corporate Director of Administration for The Chubb Institute electronically filed a document entitled "2005 Annual Institutional Report for the Year July 2004 to June 30, 2005." This document was checked by R. David Wycoff, Campus Director for the Springfield Campus of The Chubb Institute. This report specifically misrepresented the correct numbers of students placed in their field of study with the

10

purpose of obtaining accreditation from the Accrediting Commission of Career Schools and

Colleges of Technology (ACCSCT) and thus entitle The Chubb Institute Title IV/HEA funds

from the Federal Government. A copy of this report is Attached as Exhibit "D."

      e.. On December 7, 2005, Valeria Yancey, Campus President for The

Chubb Institute's Jersey City Campus submitted a document entitled "Probation Officer

Response" to Elise Scanlon of Accrediting Commission of Career Schools and Colleges of

Technology (ACCSCT).  This report specifically misrepresented the correct numbers of students

placed in their field of study with the purpose of obtaining accreditation from the Accrediting

Commission of Career Schools and Colleges of Technology (ACCSCT) and thus entitle The

Chubb Institute Title IV/HEA funds from the Federal Government. A copy of this report is

Attached as Exhibit "E."

      f.. During the time period that The Chubb Institute and The High Tech

Institute submitted the above referenced false documents, The Chubb Institute submitted 1000's

(thousands) of Financial Aid Forms directly to the Department of Education and requested and

received payment as indicated in this complaint.

      g.. In fact, as a direct result of the false documents and certifications

submitted to Accrediting Commission of Career Schools and Colleges of Technology(ACCSCT),

The Chubb Institute received Federal funds from the Department of Education through Title IV

and HEA that it would not have been entitled to had the Defendant not submitted the false

documents.

      (ii) causing the filing and presentation of Chubb students' claims for financial

aid from Title IV/HEA financial aid programs when and/or after Chubb misrepresented to

11

prospective students, the accreditation agencies and the federal government with false certifications, assurances and records the nature of Chubb's programs and externships, <u>the employability of its graduates and its employment placement services and placement numbers</u>. The students, in turn, relied on these substantial misrepresentations to their detriment when deciding to enroll at Chubb and apply for Title IV/HEA financial aid (See 34 CFR §668.71, Authority: 20 U.S.C. 1094).

      (iii)  causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs when and/or after <u>Chubb misrepresented</u> to students, the accreditation agencies and the federal government with false certifications, assurances and records that, pursuant to 20 U.S.C. 1091, 1094 and 34 CFR §668.32, Subpart C – Student Eligibility, the students were making satisfactory academic progress toward completing their program of study. Chubb made these misrepresentations in certifications to the government when its programs were taught open book and the answers to tests were given to students in advance of the tests.

      (iv)  causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs when and/or after <u>Chubb misrepresented</u> to the students whether they met Chubb's own <u>admission criteria and/or whether the students could benefit from the education or training offered</u>. Chubb made these misrepresentations to the students, in violation of ACCSCT standards of accreditation, by: (1) changing admission test scores, some from failing grades to passing grades; and (2) admitting students that were not able to speak and write English fluently as required by Chubb's own admission criteria. The students, in turn, relied on these substantial misrepresentations to their detriment when deciding to enroll at Chubb and apply for Title IV/HEA financial aid (See 34 CFR §668.71, Authority: 20 U.S.C. 1094).

      (v)  causing the filing and presentation of Chubb students' claims for financial aid

12

from Title IV/HEA financial aid programs of students that were ineligible to receive Title IV/HEA program funds. The students were ineligible, including but not limited to, because they "did not make satisfactory academic progress toward completing their program of study" in violation of 20 U.S.C. 1091 (c), 34 CFR §668.32 (f) and ACCSCT standards of accreditation. Relators allege that teachers and staff were pressured by Chubb to give higher grades to students that were not making satisfactory progress so that Chubb would obtain the Title IV/HEA program funds. Chubb's management also made "professional judgments" admitting and allowing students that were ineligible for Title IV/HEA program assistance to apply for Title IV/HEA programs even though they were illegal non-citizens, did not have a valid social security number, did not comply with the U.S. Selective Service registration requirements and/or did not have a high school diploma or G.E.D. Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).

(vi) causing the filing and presentation of Chubb students' claims for financial aid from Title IV/HEA financial aid programs when and/or after Chubb misrepresented to students, the accreditation agencies and the federal government with false certifications, assurances and records that it was in compliance with HEA, Title IV, sections, 487(a) and 487(a)(20) that prohibits colleges and universities from providing "any commission, bonus or other incentive payment" to recruiters based on recruiting activities.

### III) CHUBB INSTITUTE - HISTORICAL BACKGROUND

25.     The Chubb Institute is a technical career training institute. They have eight campuses in Illinois, New Jersey, New York, Pennsylvania and Virginia. The are four school sites in New Jersey and two in New York.. The New Jersey schools are located in Cherry Hill, Jersey City, North

Brunswick and Parsippany. The New York schools are located in New York City and Westbury.

26.     The Chubb Institute has been open for 30 years. On its own website regarding the beginning of the Chubb Institute it states, "In 1970, one of the largest insurance organizations in the world needed qualified people to run its multimillion dollar computer center. Not able to find skilled employees, it created its own training center. This proved so successful that companies like IBM, Johnson & Johnson and UPS soon asked The Chubb Institute to provide them with computer professionals. And so The Chubb Institute was born."

27.     "In 2004, The Chubb Institute was acquired by High-Tech Institute (HTI), which added the Chubb Institute's eight locations to its list of 17 HTI campuses throughout the United States...  Since 1970, the Chubb Institute has "trained more than 40, 000 in a wealth of fields that have led to promising careers." Chubb Website.

28.     The Chubb Institute offers the following programs: Computer Networking & Security, Graphic Design & Animation, Massage Therapy, Medical Administration, Medical Assistant, Medical Billing & Coding and Surgical Technologist.

## IV) CHUBB'S REPRESENTATIONS ABOUT THEIR SCHOOL
## CAREER SERVICES

29.     Chubb states on their website that the Medical Assistant program and Medical Billing & Coding program both "conclude with an externship in a medical facility or medical office or hospital, where the student will practice the skills they learned in the classroom."

30.     The Chubb Institute represents that graduates work for a number of top corporations, including American Express Bank, Blue Cross/Blue Shield, State Farm Insurance, Health Management Systems and others. (See Chubb website).

14

31.     Chubb states on their website in the "Top 10 Reasons to Enroll" that Chubb has:

(3) "Fast, Convenient, Quality Training - Programs are designed to get you the sills you need to succeed in the shortest amount of time possible."

(5) "Business Advisory Boards - The Chubb Institute partners with the local business community and seeks its input when developing our curricula.  The end result is training programs that are practical, job relevant and meet the needs of today's businesses."

(6) Career Services Assistance – "The Chubb Institute's ultimate goal is to train its graduates for effective careers.  Our full-time career Services staff assists students in good standing in developing life-long job search skills."

(8) Financial Assistance for Those Who Qualify – "We offer a variety of financing options as well as a trained, full-time staff to help you receive the aid for which you qualify."

32.     Chubb states on their website in addressing high school students that "Let one of our Admissions Representatives walk you through the entire application process and figure out how much financial aid you qualify for.  We're here for you-before you enroll, when you're in school, and after you graduate."

33.     Chubb states on their website regarding "providing opportunities" that, "When you graduate from The Chubb Institute, you'll be a marketable professional who's qualified for a long-term career.  We know what today's employers are looking for, so we make sure your skills match their needs.  Successful, growing companies are all looking for people who are trained in the

15

programs we teach. People like you."

34.     Chubb states on their website regarding "Graduate Placement Assistance" that, "After you graduate, we'll do everything we can to help you find a position in your career field."

35.     Chubb states on their website regarding "The Admissions Process, best of all, an Admissions Representative will walk you through the entire process from start to finish. We'll help you pick the program that's right for you, clearly explain everything you need to submit, and more. We'll even have a financial aid representatives sit down with you and discuss the amount and type of Federal Financial Aid that may be available to you."

### CHUBB'S FINANCIAL AID PROCESS REPRESENTATIONS

36.     Chubb states on their website regarding Financial Aid, "To help students achieve their financial goals, we make Financial Aid available to those who qualify. Those that do can apply for loans, grants and scholarships!  Finding out if you qualify is easy because we've made the Financial Aid process at The Chubb Institute as simple as possible."

37.     Chubb states on their website as regards the "Financial Aid Process", "To help students achieve their financial goals, we make Financial Aid available to those who qualify. If you do qualify, you can apply for loans, grants, scholarships and more!" "Here's how the Financial Aid process works: (1) Make sure you are eligible for Financial Aid, Generally speaking, you will be eligible for Financial Aid if you: - Are enrolled as a regular student in an eligible program. Make satisfactory academic progress toward completing your program of study. 2) Complete the Enrollment Agreement. Before we can help you determine the Financial Aid you may qualify for, you must enter your Admissions Representative and enroll in the school. 3) Before meeting with a Financial Advisor, you'll be given a Financial Aid packet, which you should complete prior to this

meeting. **This packet contains the Free Application for Federal Student Aid (FAFSA). The federal government uses this to determine the amount of aid you will receive.**   During this meeting, the Financial Aid Advisor will review your application for completeness and accuracy, and will then perform a calculation to estimate how much aid, if any, you are eligible to receive. (Emphasis added)

38.     Educational institutions request Title IV funds for eligible students through several programs, including the Federal Pell Grant Program ("Pell"), the Federal Supplemental Educational Opportunity Grant Program ("FSEOG"), the Federal Perkins Loan Program ("Perkins") and the Federal Family Education Loan Program ("FFELP").

39.     For Pell Grant funds, Chubb submits a request for those funds directly to the Secretary of the United States Department of Education.  The request for funds is not a student application but a request prepared and transmitted by Chubb to the Secretary of the United States Department of Education, stating the requested amount of funds.  The United States Department of Education transfers the Pell Grant funds electronically directly into a Chubb account.  Upon receiving the Pell Grant funds, Chubb credits various Chubb students for tuition paid.  A Chubb student does not request or receive a dime of the Pell Grant funds.

40.     For government-insured loans, including the FFELP, Chubb submits the request for those funds directly to a private lender.  The Chubb request for government-insured loan funds, arranged, managed and prepared by Chubb, includes a student application that contains an express certification by Chub that the student is an eligible student under the Title IV program. The claim for government-insured loans must include this Chubb certification.

41.     The United States Government pays all interest on the government-insured loans

17

while the students are enrolled in classes and during authorized grace periods.  The loans are guaranteed by state agencies or non-profit organizations (called "guarantee agencies"), and are subsidized and reinsured by the United States Department of Education.  If a student defaults, the guarantee agency reimburses the lender.  If the guarantee agency cannot collect from the student, the Department of Education reimburses the agency.

42. Students are responsible for paying back the United States Government once they graduate or stop attending the university.  Students disqualified from a university must still repay the federal loans.

## CHUBB'S ADMISSION PROCESS

43.    Chubb states on their website as regards, "The Admissions Process", Here's how the Admissions process works:

1) "Make sure you meet our admission requirements: **You must be able to speak and write English fluently.  You must possess a minimum of a high school diploma or the equivalent and must provide proof of high school graduation."** (Emphasis added)

2) "Complete an Application for Admissions and participate in on on-site campus tour and interview.  Interviews are conducted by an Admission Representative to review the candidate's education background, work experience, **financial plans** and career preferences.  The Admissions Representative will also make sure the candidate's admissions requirements are met.

3) "Achieve a passing score on our Admissions Evaluation.  This evaluation, which requires no preparation, helps the school measure a candidate's ability to perform in school and on the

18

job. **Once you meet the admissions criteria and complete the admissions process, you are accepted and may begin to enroll in the school.**" (Emphasis added)

44.      Chubb states on their website as regards, "Admissions Frequently Asked Questions": "What happens after I'm accepted?  Candidates who have met the admissions criteria and have completed the admissions process may be referred to the Executive Director or a designated school official for acceptance....Enrollment consists of signing an Enrollment Agreement and Payment Agreement (for non-financial aid applicants) and paying a registration fee....The exam results remain valid for one year from the test date....Students are responsible for any additional charges incurred for repeated courses..."

## CHUBB'S REPRESENTATIONS ABOUT ITS CURRICULUM

45.      In Chubb's website states on its "Mission Statement" in "Our Commitment to Our Students" that:

"Our goal is to provide the highest quality training that enables a person to start or enhance their career...At The Chubb Institute, we constantly meet with major employers and industry leaders to understand their job needs.  We then develop the curriculum that trains people in these needed skills to fulfill these job requests. The result is that The Chubb Institute's training is always practical and job relevant, resulting in a tremendous demand for our graduates."

46.      Chubb states on their website as regards the Chubb Institute Programs, "No matter which of our programs you choose, you'll complete your Diploma in a little more than one year, or less.  Get the training you need, then get the job you want."

47.      Chubb states on their website as regards their "Massage Therapy Diploma Program"

19

under "What Does Our Massage Therapy Program Offer You?, that it offers a, "Supervised Clinic in a clinical setting."

48.     Chubb states on their website as regards their "Medical Assistant Diploma Program" under "What Does Our Medical Assistant Program Offer You?, that it offers, "An externship in a medical facility."

49.     Chubb states on their website as regards their "Medical Billing & Code Diploma Program" under "What Does Our Medical Billing & Coding Program Offer You?", that it offers an, "Externship in a medical office or a hospital."

50.     Chubb states on their website as regards their "Surgical Technologist Diploma Program" under "What Does Our Surgical Technologist Program Offer You?", that it offers, "An externship at a medical facility."

## V) CHUBB'S MISREPRESENTATIONS - EMPLOYMENT PLACEMENT NUMBERS, ADMISSION CRITERIA, THE ACADEMIC PROGRESS OF ITS STUDENTS AND INCENTIVE COMPENSATION FOR RECRUITERS

51.     As detailed below, since in and around November 2001, on a nationwide basis, Chubb made misrepresentations to prospective students, enrolled students, the Secretary of Education and its accrediting agencies, the ACCSCT and ACCET, that violated its participation agreement with the Secretary of Education that allowed it to receive Title IV/HEA monies. These misrepresentations not only caused the filing of false claims but also made Chubb ineligible to receive Title IV/HEA monies.    Therefore, any claim made by students as a result of Chubb's misrepresentations were caused to be made or presented by Chubb and were false or fraudulent.

## CHUBB MADE MISREPRESENTATIONS TO PROSPECTIVE STUDENTS, THE ACCREDITATION AGENCIES AND THE FEDERAL GOVERNMENT ABOUT JOB PLACEMENT NUMBERS IN CERTIFICATIONS AND ASSURANCES

20

52.      Relators allege that since in and around November 2001 on a nationwide basis, Chubb has misrepresented to prospective students placement numbers and the ability for Chubb's Career Services to make placements for students.

53.      Chubb misrepresented their job placement numbers in certifications and assurances to the accreditation agencies (ACCSCT - Accrediting Commission of Career Schools and Colleges of Technology) and the federal government so that Chubb's students could qualify for federal loans and/or grants.

54.      The ACCSCT requires 70% job placement overall for Chubb.   During admission interviews, Admission Representatives would orally convey that the school's placement numbers were 85-90%.  However, these numbers were based on false placement data.

55.      An "Enrollment Agreement" includes a statement that is executed by the student that they were not guaranteed that Chubb would place them in a job.  However, Admission Representatives did in fact make oral guarantees that prospective students would be placed in a job by Chubb.

56.      A placement is employment gained through the efforts of career services staff of a student in a job where they would have had to come to the school to learn the skill to do the job. Students were counted as placed when they were in jobs unrelated to their curriculum.  Students placed in menial jobs, such as administrative tasks, were counted as being placed in jobs related to their curriculum e.g. computer programming, website design.

57.      This process often called "career pathing" artificially boosted Chubb's placement numbers and was a misrepresentation to students and a fraud upon the accreditation agencies and the

21

government.

58.     Chubb also misrepresented to prospective students for Medical Billing and Coding and other curriculum that included externships that Chubb had a placement referral base for these curriculum and externships when in fact they did not or did not have an adequate placement referral base.

59.     Chubb misrepresented their employment placement numbers and the externships of their programs to increase enrollment numbers, fraudulently obtain accreditation and obtain Title IV/HEA funds for Chubb.

## CHUBB MADE MISREPRESENTATIONS TO PROSPECTIVE STUDENTS, THE ACCSCT AND ACCET AND THE DEPARTMENT OF EDUCATION ABOUT ITS ADMISSIONS CRITERIA

### Chubb Changed Admission Test Scores from Failing to Passing

60.     Chubb knowingly admitted unqualified students that did not achieve a passing score on Chubb's Entrance Assessment Test in violation of their own admission criteria and ACCSCT standards.

61.     Relators allege that Chubb employees changed the admission test scores of unqualified students such that failing grades were changed to passing grades and/or low passing grades were made higher.  This process was known as applying "pixie dust" to the tests.

62.     Chubb admission personnel changed the tests to increase their enrollment numbers and obtain Title IV/HEA funds for Chubb.

63.     Chubb also changed the test scores as a marketing ploy to convince prospective students that they could succeed at Chubb and in the academic program of their choice.

### Chubb Admitted Unqualified Students That Could Not Speak or Write English Fluently

22

64.     Chubb's own admission criteria require that enrolling students speak and write English fluently.

65.     Chubb admitted foreign and other students that could not speak or write English fluently.

66.     Chubb admitted students that were accompanied by a relative who translated for them during the admissions process and clearly indicated that the student could not speak or write English fluently.

67.     Chubb admitted students that were not fluent in English to increase their enrollment numbers and obtain Title IV/HEA funds for Chubb.

### CHUBB MISREPRESENTED TO STUDENTS AND THE DEPARTMENT OF EDUCATION IN CERTIFICATIONS AND ASSURANCES THAT STUDENTS WERE MAKING SATISFACTORY ACADEMIC PROGRESS TOWARD COMPLETING THEIR PROGRAM OF STUDY

68.     Pursuant to 20 U.S.C. 1091, 1094 and 34 CFR §668.32, Subpart C - Student Eligibility, in order for students to be eligible for Title IV/HEA programs their institution of higher education had to certify that they were making satisfactory academic progress toward completing their program of study.

69.     Chubb students that had grades that would make them ineligible for Title IV/HEA programs had their grades fraudulently raised by Chubb so that they would be eligible.

70.     Relators allege that teachers were pressured by management to change the grade curving of classes such that more students would pass so that Chubb would have a higher retention rate and would be allowed under federal and state guidelines to receive more of the tuition monies paid by students.

23

71.    Chubb teachers gave open book tests and gave the answers to tests in advance so that students would pass.

72.    Chubb certified that students were making satisfactory progress toward completing their program of study when they were not or Chubb could not so certify based on its curriculum and grading system, so that the students would be eligible for Title IV/HEA programs.  Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).  In this manner, Chubb caused the filing and presentation of false claims to the government and violated the False Claims Act.

**CHUBB MISREPRESENTED TO STUDENTS, THE ACCREDITATION AGENCIES AND THE DEPARTMENT OF EDUCATION IN CERTIFICATIONS AND ASSURANCES THAT IT WAS IN COMPLIANCE WITH HEA, TITLE IV, SECTIONS 487(A) AND 487(A)20 PROHIBITING INCENTIVE PAYMENTS TO RECRUITERS**

73.    Chubb in flagrant violation of the Title IV ban prohibiting "commissions, bonuses or other incentive payments" to recruiters based on recruiting activities, has compensated Admission Representatives based directly upon enrollment activities since at least 1998- 2004.  Chubb calls enrollments "starts" and has a Start Budget.  Chubb publishes charts setting forth the enrollment activity numbers necessary for a performance rating in its "Admission Compensation Plan."  Along with the charts, Chubb publishes its salary schedules, with a salary range corresponding to each performance rating and it publishes its "Compensation Adjustment Scale" chart which shows the level of points necessary for an increase of up to 10% or a decrease of up to 10% of an Admissions Representatives salary.  An enrollment counselor thus knows his or her salary range, based on her enrollment activities level.  Chubb furthermore "ranks" counselors based upon their enrollment numbers.

74.     Admissions Representatives are graded with "scorecards" or Admissions Performance Charts where they earn points for their percentage of targeted starts and the retention rate of their starts. The numbers of points earned fall into the following categories: Below Average, Average, Very Good, Excellent and Outstanding. The Admissions Representatives are tracked on a weekly or monthly basis. Relator Giunta was responsible for filling out the scorecards. Unsuccessful performance with the "scorecards" may lead to employment termination.

75.     The top ranking counselors are among the highest paid counselors, receiving the highest salary as well as incentive trips, awards and gifts based upon their enrollment numbers. Admissions Representatives that have the highest number of starts make the Chubb "President's Club" and are eligible for free annually sponsored vacations with Chubb.

76.     One of the "terms and conditions" of the Program Participation Agreement (hereinafter the "Agreement") that Chubb makes with the federal government and Department of Education in order to be eligible to receive Title IV funds is the incentive compensation ban. In the Agreement, the educational institution certifies that "it will not provide...any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments...(Agreement, p. 5, para. 22, quoting directly from the HEA, Sec. 487 (a)(2) and the federal regulations, 34 C.F.R. Sec. 668.14 (b)(22)).

77.     Educational institutions violating the incentive compensation ban must return Title IV funds, along with interest and special costs incurred by DOE. For example, University of La Verne was directed to refund $6, 528, 981 FFELP funds and $395,730 in Pell funds. On December 13, 2001, Benedictine University was directed to return $25, 521 Pell

25

funds, $183, 407 FFELP funds, and $13,060 FSEOG funds.  On September 4, 2002, Southern

Wesleyan University was directed to return $18,346,658 FFELP funds, $1,079,565 Pell funds,

$21,400 FSEOP funds, and $3,500 Perkin funds.

78.     Chubb by violating the incentive compensation ban falsely asserts compliance

with HEA, Title IV  Chubb's request for government-insured loan funds, arranged, managed and

prepared by Chubb, includes a student application that contains an express certification by Chubb

that the student is an eligible student under the Title IV program.  Chubb knows that this claim

for funds is false because Chubb knows its students are not eligible under the Title IV program

due to Chubb's violations of the HEA incentive compensation ban.    Chubb is ineligible for

those funds because of its intentional violations of the HEA funding statute incentive

compensation restriction that is a core prerequisite for an institution's eligibility to request and

receive Title IV funds.

79.     Therefore, Chubb knowingly causes the filing of false claims for students that are

ineligible for Title IV funds.  Chubb also knowingly uses the false records or statements provided

to the Department of Education in their "Agreement" that certifies they are in compliance with

the prohibition of incentive compensation for enrollments, to get the false student loan claims

paid or approved.

## VI) CHUBB KNOWINGLY CAUSED THE FILING OF FALSE CLAIMS FOR STUDENTS THAT WERE INELIGIBLE FOR TITLE IV/HEA ASSISTANCE

80.     In order for students to be eligible for federal loans and/or grants, the federal

government requires of the student (See also 20 U.S.C. 1091, 1094 and 34 CFR §668.32, Subpart C -

Student Eligibility), according to Chubb's own website, the following:

      a.      be a U.S. citizen or an eligible non-citizen
      b.      have a social security number
      c.      have a high school diploma or GED
      d.      have complied with U.S. Selective Service registration requirements
      e.      sign required certification forms
      f.      have never been convicted of a drug offense
      **g.      make satisfactory academic progress toward completing their program of study.**

81.     Chubb's Financial Aid Advisors put a financial aid package together for the student and submits it to the federal government.

82.     Prospective students that did not meet the eligibility requirements had their financial aid "package" sent to Chubb's national headquarters in Parsippany, New Jersey where a "professional judgment" was made and the local campus e.g. North Brunswick's financial advisor, was called and told to submit the financial aid forms to the federal government despite the fact that the students did not meet the eligibility requirements.

83.     Chubb's financial aid process allowed Chubb to obtain federal loan monies from students that would otherwise be ineligible to obtain those funds.

84.     Chubb must provide a statement that certifies the eligibility of any student to receive a loan pursuant to, but not limited to, 20 U.S.C. 1087d and Title IV/HEA Sec. 454(a)(1)(C).

85.     Chubb knowingly conspired to present false claims and use false records to obtain payments from federal loans and/or grants from the federal government.

**VII) CHUBB'S MISREPRESENTATIONS AND FRAUD CAUSED
FALSE OR FRAUDULENT TITLE IV/HEA CLAIMS  TO BE MADE
AND TUITION MONIES TO BE  PAID TO CHUBB**

86.      Relators allege that since in and around November 2001, practices at The

Chubb Institute as regards the admission, teaching and job placement of students knowingly caused

and supported a fraud upon the U.S. Government.  Chubb students, that were (1) not qualified to be

admitted to Chubb; and/or (2 )not eligible for Title IV/HEA program assistance; and/or (3) relied on

misrepresentations when enrolling at Chubb which made Chubb ineligible to receive Title IV/HEA

monies, applied for and received Title IV/HEA program monies with the fraudulent support and

assistance of The Chubb Institute.  Chubb's misrepresentations and fraud not only caused the filing

of false claims but also made Chubb ineligible to receive Title IV/HEA monies.   Therefore, any

claim made by students as a result of Chubb's misrepresentations were caused to be made or

presented by Chubb and were false or fraudulent.

87.      Specifically, the relators allege that since November 2001, on a nationwide basis:

a.      students that were not qualified for admission to The Chubb Institute were admitted
to Chubb and assisted by Chubb in obtaining federal loans and grants;

b.      students were admitted to The Chubb Institute and fraudulently allowed to complete
training curriculum despite the fact that they were not competent to do so, enabling
The Chubb Institute to keep all or the majority of the federal loan monies of the
students;

c.      students that did not meet the federal government's eligibility requirements for
application and qualification for federal loans were fraudulently assisted and
supported in obtaining federal loans by Chubb;

d.      Chubb fraudulently misrepresented their job placement numbers to students when
students sought admission to Chubb and misrepresented Chubb's ability to place
students for specific curricula such as Medical Billing and Coding;

e.      Chubb fraudulently misrepresented their job placement numbers to prospective

students, their accreditation agencies the ACCSCT and ACCET and the Department of Education  , to increase their enrollment and so that Chubb's students could qualify for federal loans and grants.

f.    Chubb violated the incentive compensation ban for Admissions Representatives on Enrollments.

(Attached as Exhibit "F" is the Relators' Initial Disclosure Statement and its Exhibits 1-24 and the Addendum to the Initial Disclosure Statement and its Exhibits 25-32, which were filed with the United States Attorneys' Office as required by the False Claims Act and incorporated herein as if set forth in detail).

## FIRST CLAIM
### (Knowingly False Statements to Get a False or Fraudulent Claim Paid or Approved, In Violation of the False Claims Act, 31 U.S.C. § 3729 (a)(1))

88.    The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

89.    On information and belief, the defendants presented, or caused to be filed, with the United States government claims with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate, that the claims were inaccurate or inappropriate and false and caused payments for the claims to be made by the United States government.

90.    By reason of the violation of 31 U.S.C. § 3729(a)(1) defendants have knowingly or recklessly damaged the United States government in an as yet undetermined amount.

## SECOND CLAIM
### (Violation of 31 U.S.C. § 3729(a)(2)
### False Claims Act - False Record or Statements)

91.     The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

92.     On information and belief, defendants presented, or caused to be filed, with the United States government claims with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate, that the claims were inaccurate or inappropriate and false and caused payments for the claims to be made by the United States government.

93.     By virtue of the acts described above, Defendants have knowingly made, used or caused to made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States of America, in contravention of the False Claims Act (31 U.S.C. § 3729 (a)(2)), to the damage of the treasury of the United States of America, by causing it to pay out money it was not obligated to pay.

94.     By reason of the violation of 31 U.S.C. § 3729(a)(2) defendants have knowingly or recklessly damaged the United States government in an as yet undetermined amount.

## THIRD CLAIM
### (Violation of 31 U.S.C. § 3729(a)(3)
### False Claims Act - Conspiracy)

95.     The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

96.     The defendants in performing the acts set forth above, conspired to defraud the United States government in violation of 31 U.S.C. § 3729 9a)(3) by getting false or fraudulent

30

claims allowed or paid to the damage of the United States' government.

97.     By virtue of the acts described above and others, defendants knowingly conspired to defraud the United States by getting false and/or fraudulent claims paid by the United States.

98.     The United States paid these claims because of defendants' fraudulent misrepresentations and omissions.

**FOURTH CLAIM**
**Piercing the Corporate Veil as to**
**The Chubb Corporation and Chubb Services Corporation**

99.     The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

100.    At All times during the course of conduct complained of in this Complaint, Defendants The Chubb Corporation and Chubb Services Corporation exclusively controlled The Chubb Institute;

101.    The Chubb Institute was managed and reported to Defendants The Chubb Corporation and Chubb Services Corporation;

102.    All moneys paid by the Federal Government to The Chubb Institute directly benefitted Defendants The Chubb Corporation and Chubb Services Corporation.

103.    Defendants The Chubb Corporation and Chubb Services Corporation used The Chubb Institute as an alter ego and commits the fraudulent acts contain herein.

104.    Defendants The Chubb Corporation and Chubb Services Corporation were aware of and had complete control of the fraud committed by The Chubb Institute.

105.     Accordingly, Defendants The Chubb Corporation and Chubb Services Corporation created this corporate structure to avoid its duties to consumers and to shelter its wrongdoings from judicial or administrative oversight to the extent that this Court Must "pierce the corporate veil" and hold them accountable to Defendant, The Chubb Institute.

## FIFTH CLAIM
### Piercing the Corporate Veil as to
### The High Tech Institute

106.     The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

107.     At All times during the course of conduct complained of in this Complaint, Defendants High Tech Institute exclusively controlled The Chubb Institute;

108.     The Chubb Institute was managed and reported to Defendants High Tech Institute;

109.     All moneys paid by the Federal Government to The Chubb Institute directly benefitted Defendant High Tech Institute.

110.     Defendant High Tech Institute used The Chubb Institute as an alter ego and commits the fraudulent acts contain herein.

111.     Defendants High Tech Institute was aware of and had complete control of the fraud committed by The Chubb Institute.

112.     Accordingly, Defendant High Tech Institute created this corporate structure to avoid its duties to consumers and to shelter its wrongdoings from judicial or administrative oversight to the extent that this Court Must "pierce the corporate veil" and hold them accountable to Defendant, The Chubb Institute.

32

## SIXTH CLAIM
### Successor Liability as to
### The High Tech Institute

113.    The Relators hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

114.    At All times during the course of conduct complained of in this Complaint, Defendant High Tech Institute purchased and exclusively controlled The Chubb Institute;

115.    The Chubb Institute was managed and reported to Defendant High Tech Institute;

116.    All moneys paid by the Federal Government to The Chubb Institute directly benefitted Defendant High Tech Institute.

117.    Defendant High Tech Institute used The Chubb Institute as an alter ego and committed the fraudulent acts contain herein.

118.    Defendant High Tech Institute was aware of and had complete control of the fraud committed by The Chubb Institute.

119.    Accordingly, Defendant High Tech Institute created this corporate structure to avoid its duties to consumers and to shelter its wrongdoings from judicial or administrative oversight to the extent that this Court must hold The High Tech Institute liable as the successor to The Chubb Institute.

33

## PRAYER FOR RELIEF BY PLAINTIFF UNITED STATES

WHEREFORE, plaintiff United States of America prays that:

1.      With respect to Count I-III, that judgment be entered in favor of plaintiff United States and against defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc. for treble the United States' damages and for civil penalties of between $5,000 and $10,000 for each false claim, plus interest and costs;

2.      With respect to Counts IV-VI, that judgment be entered in favor of plaintiff United States and against defendants; and

3.      Granting such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF BY PLAINTIFF-RELATORS
## MARY BETH PILECKI-SIMKO AND TOM GIUNTA

WHEREFORE, plaintiff Relators Mary Beth Pilecki-Simko and Tom Giunta  pray for judgment entered against the defendants The Chubb Institute, The Chubb Corporation, Chubb America Service Corporation and High-Tech Institute, Inc., each of them jointly and severally, as follows:

1.      In an amount, presently undeterminable, on the First, Second and Third Claims, for violation of 31 U.S.C. § 3729 (a)(1), (2) and (3) sum duly trebled in addition to a fine of not less than $5,000 per violation and not more than $10,000 per claim, together with attorney's fees and costs;

2.      For an appropriate percentage of the proceeds collected by the United States pursuant to 31 U.S.C. §§ 3729 to 3733 under Counts I-III and Counts IV-VI;

3.      For an amount for reasonable expenses necessarily incurred by the relators in the prosecution of this action;

4.      For all reasonable attorney's fees and costs which the relators incurred in connection with these proceedings;

5.      In addition, plaintiffs pray for such further and additional relief at law or in equity that this Court may deem appropriate or proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, United States ex. rel. Mary Beth Pilecki-Simko and Tom Giunta individually, demand a trial by jury on all issues so triable.

Dated: 8/19/09                          GREEN & PAGANO, L.L.P.

                                        By:    s/ Michael S. Green
                                               MICHAEL S. GREEN, ESQ.
                                               522 Route 18, P.O. Box 428
                                               East Brunswick, New Jersey 08816
                                               Tel: (732) 390-0480
                                               Fax: (732) 390-0481

Dated: 8/19/09                          KANTROWITZ, GOLDHAMER & GRAIFMAN

                                        By:    s/ Gary S. Graifman
                                               GARY S. GRAIFMAN, ESQ.
                                               210 Summit Avenue
                                               Montvale, New Jersey 07645
                                               Tel: (201) 391-7000
                                               Fax: (201)307-1086

Dated: 8/19/09                          LAW OFFICES OF
                                        EDWARD HARRINGTON HEYBURN, PC

                                        By:    s/ Edward Harrington Heyburn
                                        EDWARD HARRINGTON HEYBURN, ESQ.
                                        37 Robbinsville-Allentown Road
                                        Robbinsville, New Jersey 08691
                                        Tel: (609) 259-7600
                                        Fax:(609) 259-7303