NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————— )
UNITED STATES OF AMERICA, *ex rel.* )
MARY BETH PILECKI-SIMKO and )
TOM GIUNTA, )               Hon. Garrett E. Brown, Jr.
 )
          Relators, )               Civil Action No. 06-3562
 )
          v. )               **MEMORANDUM OPINION**
 )
THE CHUBB INSTITUTE, THE CHUBB )
CORPORATION, CHUBB AMERICA )
SERVICE CORPORATION, and )
HIGH-TECH INSTITUTE, INC. )
 )
          Defendants. )
———————————————————————— )

**BROWN**, Chief Judge:

This matter comes before the Court upon the Court's Order that Relators show cause explaining why they should be granted leave to amend their pleadings in light of the Court's March 22, 2010 Opinion and Order dismissing their Second Amended Complaint (SAC) for failure to satisfy the pleading requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, the Court finds that Relators have not provided just cause for amendment, and the Court will dismiss the SAC with prejudice.

### *Background*

This matter is a *qui tam* action brought pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq., by Relators Mary Beth Pilecki-Simko and Tom Giunta against their former employer, The Chubb Institute (TCI). Relators allege that TCI knowingly caused false claims to

1

be filed by making a number of misrepresentations to the Department of Education, its

accrediting agencies, and students that wrongfully enabled TCI to secure student financial aid in

the form of loans and grants from the federal government.  Relators also seek to impose liability

for this conduct on TCI's former corporate parents, High-Tech Institute (HTI) and The Chubb

Corporation, on the basis of their alleged control of TCI's actions.

Defendants TCI, the Chubb Corporation, and HTI moved to dismiss Relators' SAC for

failure to satisfy the pleading requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6),

and this Court granted the motion on March 22, 2010.  (Doc. Nos. 52, 53.)  In granting

Defendants' motions, the Court held (1) that Relators' allegations of Defendants' misconduct

failed to state a False Claims Act claim with particularity, and (2) that Relators' failed to state a

veil-piercing or successor liability claim against TCI's former corporate parents, The Chubb

Corporation and HTI.  (Doc. No. 52 ("March 22 Opinion") at 17–23, 26–32.)  Although Relators

had not specifically sought leave to amend to cure any pleading deficiencies, the Federal Rules'

liberal standard for granting leave to amend deficient pleadings prompted this Court, out of an

abundance of caution, to give Relators an opportunity to explain why they should be permitted a

third chance to amend their pleadings.  Accordingly, the Court dismissed the SAC without

prejudice.

Relators timely responded to the Court's Order with a memorandum seeking leave to

amend the SAC "only as to the claims and allegations regarding (1) the False Certification of

Compliance with the Incentive Compensation Plan; and, (2) the Misrepresentations Regarding

Employment Placement."  (Relators' Resp. at 3.)  In support of this argument, each Relator has

submitted new declarations explaining the nature of TCI's incentive compensation plan and

2

detailing the alleged false placements reported by TCI to its accreditation agencies.  Defendants reply that Relators' request is foreclosed by their failure to submit a proposed Third Amended Complaint, and that Relators' response fails to address the pleadings deficiencies underpinning this Court's March 22 Opinion.

### Analysis

The inquiry before the Court is whether further amendment would be futile.  *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Although Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires," and courts typically permit amendment to cure a complaint's lack of particularity under Rule 9(b), leave should not be granted where amendment is futile.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434–35.  Amendment is futile when the proposed amended pleading would not withstand a motion to dismiss.  *E.g.*, *In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1332; *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).  Because this Court granted Defendants' motion to dismiss on both 9(b) and 12(b)(6) grounds, the principles encompassed by those Rules guide this Court's assessment of the viability of an amended pleading.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434–35.

This Court's task is frustrated by the fact that Relators' failed to submit a proposed amended complaint in their response to the Court's Order to show cause.  The Third Circuit has repeatedly held that such omission "is fatal to a request for leave to amend."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006); *cf.* L. Civ. R. 7.1(f) (requiring parties

moving for leave to amend the pleadings to include "a copy of the proposed pleading or amendments"). Although this Court could summarily reject Relators' response on this basis, the Court will exercise its discretion to consider the arguments presented therein.

     *1. Claims Not Addressed by Relators' Response*

     In reviewing Relators' response, the Court notes that Relators do not attempt to bolster their allegations with regard to their False Claims Act claims premised on TCI's alleged false certifications of satisfactory progress, its alleged admission of sub-standard students contrary to TCI guidelines, its alleged complicity in helping ineligible students apply for financial aid, or its alleged conspiracy to commit such wrongful acts. Nor do Relators attempt to cure the pleading deficiencies that plagued their veil-piercing and successor liability claims against The Chubb Corporation and HTI. Despite the opportunity provided by this Court's Order to show cause, Relators have not sought to replead these claims. Consequently, the Court will dismiss these claims with prejudice.[1]

     *2. Relators' Proposed Amended Claims*

     Turning to the two False Claims Act claims advanced by Relators' response—false certification of compliance with the incentive compensation plan and misrepresentations regarding employment placement—the declarations supporting these claims do not address the

---

[1]Although Relators named Chubb America Service Corporation (CASC) as a Defendant in this suit, and this party has not appeared in this action and therefore did not join the motions to dismiss filed by TCI, The Chubb Corporation, and HTI, this Court previously dismissed the only claim advanced against this Defendant—veil-piercing—because Relators had not stated a claim against CASC's purported subsidiary TCI. (March 22 Opinion at 23 n.15.) In their arguments, Relators have not based their False Claims Act claims on any wrongful acts committed by CASC, and they do not now challenge the Court's ruling dismissing the veil-piercing claim against this party.

pleading deficiencies addressed by this Court's March 22 Opinion and Order.

### a. Incentive Compensation Plan

With regard to the incentive compensation plan claim, supported by the supplemental declaration of Relator Tom Giunta, Relators do nothing more than recast the same arguments about TCI's compensation plan that they advanced in opposition to Defendants' motions to dismiss.  In the March 22 Opinion, this Court found as a matter of law that the examples of the compensation plan attached to the SAC complied with the regulatory safeharbor provision, 31 C.F.R. § 668.14(b)(22)(i), because compensation was not based solely on enrollment starts, but also student retention, success at recruiting activities, records-keeping, and professionalism. (March 22 Opinion at 20–21.)  The Court also observed that "an institution adhering to a federal regulation defining the contours of permissible compensation . . . cannot have the requisite scienter to violate [Title IV's incentive compensation] ban." (*Id.* at 21.)  Rather than presenting more particularized factual allegations permitting the inference that TCI acted with scienter by falsely certifying compliance with their incentive compensation plan, Relators contend that the Court misunderstood how TCI's compensation plans worked to violate the Title IV incentive compensation ban.  Considering that Relators' response relies on the same exhibits and arguments from their opposition to Defendants' motions to dismiss, it is fair to characterize Relators' argument as one seeking reconsideration of the Court's ruling in this respect. Accordingly, Relators bear the burden of demonstrating manifest error in this Court's prior decision.  *See, e.g.*, *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  Relators arguments fall well short of this standard.

As before, Relators contend that TCI paid bonuses to admissions personnel solely on the

basis of enrollment starts, in violation of the Title IV ban, because TCI's incentive compensation program weighted enrollment starts so heavily that an employee would need to achieve a certain level of enrollments just to be eligible for a bonus.  (Relators' Resp. at 3–4; *see also* Giunta Decl. ¶¶ 2–18 & Ex. A.)  While Relators' factual deduction that TCI employees could not receive a bonus under the compensation plan without meeting certain enrollment objectives is sound, its legal conclusion that this compensation plan did not comply with the regulatory safeharbor is not. Pursuant to the safeharbor provision, salary increases are permitted "as long as that compensation is not adjusted up or down more than twice during any twelve month period, and *any adjustment is not based solely* on the number of students recruited, admitted, enrolled, or awarded financial aid."  31 C.F.R. § 668.14(b)(22)(ii)(A) (emphasis added).  Under the compensation plans attached to the SAC and Relator Giunta's Declaration, a TCI admissions counselor could earn up to 35 points of a possible 105 on the basis of meeting enrollment objectives.  (Giunta Decl., Ex. A.)  While Relators are correct that a TCI admissions counselor could not receive a bonus, which required 80 points out of 105 possible points, without receiving some of the 35 points awarded on the basis of enrollment performance, the same counselor *also* could not receive a bonus without meeting TCI expectations with regard to student retention, success at recruiting activities, records-keeping, and professionalism, which accounted for 70 of the 105 possible points.  Relators also have no answer for the Court's observation in the March 22 Opinion that an institution's attempt to comply with the regulatory safeharbor forecloses the finding of scienter required for a False Claims Act claim.  (March 22 Opinion at 21.)

Relators have not demonstrated manifest error in this Court's prior determination that TCI's compensation program complied with the regulatory safeharbor.  Accordingly, the Court

6

stands by its March 22 Opinion.  Because Relators have not alleged with particularity other examples of prohibited compensation practices not covered by the safeharbor, the Court finds that further amendment of this claim would be futile.

### b. Placement Misrepresentations

With regard to Relators' claim that TCI willfully misrepresented the employment placement rates of its graduates to its accreditation agencies with the purpose of falsely obtaining accreditation and, consequently, eligibility for Title IV financial aid, Relators initially proffered multiple documents that TCI officials had submitted to its accreditation agencies that they claimed demonstrated TCI's willfully false statements.  This Court in the March 22 Opinion disagreed, finding that "Relators' pleadings do not provide a plausible basis for making this conclusion," because "the purported false statements [were] not apparent on the face of the documents" (*id.* at 17), and because their "pleadings d[id] not identify which statements regarding the placement rates were false . . . , to what degree they were inflated or diminished, and upon whose instructions they were falsified" (*id.* at 18).  The Court also concluded that the SAC did not allege circumstantial facts permitting the inference that TCI knowingly committed acts in violation of the False Claims Act.  (*Id.* ("Conspicuously absent from the SAC is any indication, other than Relators' *ipse dixit*, that TCI had notice that its submissions contained erroneous data, let alone that they intended to use erroneous data for the purpose of defrauding the Government.")

In an attempt to address these pleading deficiencies, Relators submit the supplemental declaration of Relator Pilecki-Simko, which avers: (1) a career services representative at the TCI North Brunswick campus made two false placements of students T.M. and J.W.; (2) that career

services representatives at the TCI Jersey City campus made false and "unknown" placements in
their records; (3) that these purported misrepresentations "w[ere] driven by commissions and
[TCI's] desire to keep its schools accredited so they could obtain Title IV financial aide monies,"
which are reflected by TCI's commission plan that incentivized increased placement rates and
TCI's goal of achieving a placement rate of 85%; and (4) that the President of the Springfield,
Pennsylvania TCI campus[2] submitted a list containing "what appear to be false placements" to
TCI's accreditation agency.  (Pilecki-Simko Decl. ¶¶ 2–4, 6–13.)  Relator Pilecki-Simko supports
these allegations with various exhibits consisting of what appear to be TCI placement records
and correspondence between TCI and its accreditation agency.  (*See id.*, Exs. A–E.)  However,
these new allegations do not redress the SAC's pleading deficiencies.

As with the SAC, Relators' new allegations and supporting exhibits do not permit the
inference "that TCI had notice that its submissions contained erroneous data, let alone that they
intended to use erroneous data for the purpose of defrauding the Government."  (*See* March 22
Opinion at 18.)  As the Court explained in the March 22 Opinion, such a fraudulent purpose is a
prerequisite to liability under the False Claims Act provision relied upon by Relators, 31 U.S.C.
§ 3729(a)(2).  *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2139 (2008).
Assuming for purposes of this inquiry that TCI sought to achieve a placement rate of 85% and
gave career services personnel commissions on the basis of their placement rates, such facts do
not permit the inference that TCI encouraged career services personnel to misrepresent their
placement data.  Without more, striving to meet accreditation requirements and using incentives

---

[2]So far as the Court can tell, this is the first time during the course of this litigation that
Relators have alleged wrongdoing on the part of TCI campuses outside of New Jersey.

to reach that goal do not reflect fraudulent motive.  Furthermore, while the purported false placements presently asserted by Relators permit the inference that TCI's records and submissions may have contained flawed data, they do not permit the inference that TCI deliberately misrepresented its placement data to its accreditation agency for the purpose of defrauding the Government.  With regard to the TCI placement records presented in Exhibits A and B, Relators do not explain how TCI employees misrepresented the employment information contained therein to its accreditation agencies.  (*See* Pilecki-Simko Decl., Exs. A, B.)  With regard to the correspondence submitted by the President of the Pennsylvania TCI campus to TCI's accreditation agency, Relators do not suggest that the records enclosed therein misrepresent the current employers of the students listed, or that this TCI campus misrepresented its then-current placement rate of 68%.  (*See* Pilecki-Simko Decl., Ex. E.)  Indeed, if, as Relators suggest, an 85% placement rate served as the cut-off for accreditation, then this letter clearly discloses to the accreditation agency that this TCI campus was not meeting accreditation requirements.

Relators have not demonstrated an ability to plead particularized facts that TCI knowingly misrepresented the employment placement rates of its graduates for purposes of defrauding the Government through the payment of false claims.  The Court finds that further amendment would be futile.

### 3.  Dismissal Under 31 U.S.C. § 3730:  The Government's Concurrent Jurisdiction

Despite two prior amendments, access to TCI student placement records courtesy of a 2007 Government subpoena, and this opportunity to show cause, Relators still have not alleged

particularized facts stating a cognizable False Claims Act claim.  Relators have failed to address the pleading deficiencies highlighted by the Court's March 22 Opinion.  These circumstances convince the Court that further amendment would be futile, dilatory, and prejudicial towards Defendants.  Accordingly, the Court will dismiss the SAC with prejudice.

Pursuant to 31 U.S.C. § 3730(b)(1), the Court's dismissal of this case appears to be subject to the consent of the Attorney General, who must "give written consent to the dismissal" and provide "reasons for consenting."  The Court will give the Government 30 days from the receipt of the accompanying Order to respond to the Court's reasons, stated herein and in the March 22, 2010 Opinion, for dismissing Relators' SAC.

*Conclusion*

For the aforementioned reasons, the Court will dismiss Relators' Second Amended Complaint with prejudice, subject to the Government's consent pursuant to 31 U.S.C. § 3730.  The Court will give the Government 30 days to respond to the Court's reasons for dismissal.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: May 17, 2010

_____/s/ Garrett E. Brown, Jr._____<br>GARRETT E. BROWN, JR., U.S.D.J.