**PAUL J. FISHMAN**
United States Attorney
**DAVID DAUENHEIMER**
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel. 973-645-2925
Fax 973-297-2010
email: david.dauenheimer2@usdoj.gov

**TONY WEST**
Assistant Attorney General
**JOYCE R. BRANDA**
**RENÉE BROOKER**
**ALLISON CENDALI**
U.S. Department of Justice
P.O. Box 261
Washington, D.C. 20044
Tel. 202-616-4232
Fax 202-514-0280
email: allison.cendali@usdoj.gov

## *UNITED STATES DISTRICT COURT*
## *DISTRICT OF NEW JERSEY*

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARY BETH PILECKI-SIMKO AND TOM GIUNTA, | Honorable Garrett E. Brown, Jr. |
| *Plaintiff(s),* | *Civil Action No.* 06-3562 (GEB) |
| v. | **UNITED STATES'** |
| THE CHUBB INSTITUTE, et al. | **STATEMENT CONCERNING** |
| *Defendant(s).* | **DISMISSAL OF THIS ACTION** |

The United States respectfully submits this Statement pursuant to the Court's May 17, 2010 Order directing the government to respond to the Court's reasons for dismissing the above-captioned case with prejudice.

## I.     BACKGROUND

On August 19, 2008, the United States declined intervention in this case after investigation.  *See* Dkt. No. 5.  Relators Mary Beth Pilecki-Simko and Tom Giunta (collectively, Relators) proceeded with the litigation on behalf of the United States as provided in the *qui tam* provisions of the False Claims Act (FCA).  *See* 31 U.S.C. § 3730(c)(3).  Defendants filed two separate motions to dismiss the Relators' Second Amended Complaint (SAC) pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) on the grounds that Relators failed to plead fraud with the requisite particularity and failed to state a claim upon which relief can be granted.  *See* Dkt. Nos. 38 and 39.

In its March 22, 2010 Memorandum Opinion granting the Defendants' motions to dismiss, the Court stated:

> While the Court agrees that the weight of authority supports Relators' implied false certification theory of liability in the Title IV context under the False Claims Act, the Court finds that Relators' allegations lack sufficient particularity to satisfy Rule 9(b).

Mem. Op. 3/22/10, at 8-9.  Upon dismissing the SAC, the Court gave Relators an

opportunity to show cause as to why they should be granted leave to amend their Complaint for a third time.  In response to the Order to Show Cause, Relators filed a brief requesting leave to amend the SAC, and Defendants opposed Relators' request.  On May 17, 2010, the Court issued an Order and Memorandum Opinion holding that Relators failed to correct the pleading deficiencies noted by the Court in its March 22, 2010 Opinion, and as such, the Court dismissed the SAC with prejudice.  In addition, citing 31 U.S.C. § 3730(b)(1), which provides that a *"qui tam* action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting," the Court directed the government to respond to the Court's reasons for dismissal.

Courts have construed the consent provision of section 3730(b)(1) to apply "only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the False Claims Act, and not where the court orders dismissal." *United States ex rel. Mergent Services v. Flaherty*, 540 F.3d 89, 91 (2d Cir. 2008), *citing Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir.1990).  In cases where the court dismisses a *qui tam* action on the merits, the Fifth Circuit has concluded that requiring the Attorney General's consent "would raise separation-of-powers concerns."  *Searcy v. Philips Electronics North Am. Corp.*, 117 F.3d 154, 158 (5th Cir. 1997).  The Department of Justice (the Department) does not disagree with

2

this interpretation of section 3730(b)(1).

Nevertheless, because the Attorney General is responsible for attending to the interests of the United States in any action in federal or state court, *see* 28 U.S.C. § 517, and because the United States has a significant interest in the proper interpretation of the FCA, which plays a central role in the government's ongoing efforts to combat fraud against the public fisc, the United States respectfully responds to the Court's Order directing the government to respond to its reasons for dismissal. However, the United States' response herein is not intended to suggest that its consent is required pursuant to 31 U.S.C. § 3730(b)(1). Further, the Relators in the case *sub judice* have filed a motion for reconsideration concerning the issue of the applicability of the safe harbor as an affirmative defense. The United States respectfully requests that the Court consider this response in rendering its decision upon Relators' motion.

## II.    DISMISSAL OF THE RELATORS' FCA CLAIMS

In their SAC, the Relators alleged that Defendant TCI falsely certified its compliance with the Program Participation Agreements (PPAs) it entered into with the U.S. Department of Education (USDoE) under Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1094. Specifically, Relators alleged that TCI misrepresented its placement of students in employment (SAC ¶¶

3

51-59), failed to meet the requirements established by its accrediting agency by admitting unqualified students and students who were not proficient in English (SAC ¶¶ 60-67), falsely certified to the USDoE that TCI students were making satisfactory progress toward completing their programs of study (SAC ¶¶ 68-72), and falsely certified compliance with Title IV's ban on incentive compensation paid to recruiters (SAC ¶¶ 73-79).   Relators further allege that, because TCI failed to comply with the provisions of the PPAs, it was not eligible to receive federal student aid.  As such, TCI caused students to submit false claims to the government, because the students' financial aid applications certify that the students are enrolled in an eligible institution.  *See* SAC ¶¶ 80-85.

With respect to Relators' substantive FCA claims, the Court found that the SAC was deficient for three main reasons: (1) Relators failed to allege any facts identifying a specific false claim submitted to the government or a specific false statement used to get a false claim paid; (2) Relators failed to allege that Defendant The Chubb Institute (TCI) acted with the requisite scienter, because Relators did not show that TCI intended to defraud the government; and (3) Relators' allegations with respect to Defendants' incentive compensation policies failed as a matter of law, because the policies as written are protected by the

4

regulatory safe harbor.[1]   The United States takes no position on the overall merits of the Relators' case or the Defendants' motions.  Rather, the United States addresses the Court's underlying reasons for dismissal.

### A.      Alleging Specific False Claims or Specific False Statements

The Court held that the SAC did not meet the requirements of Rule 9(b), because Relators failed to allege a specific false claim submitted to the government or a specific false statement used to get a false claim paid.  However, Rule 9(b) does not impose an absolute requirement that a relator identify a specific false claim submitted to the government in order to avoid dismissal of his *qui tam* complaint.  Rule 9(b) requires that a plaintiff "must state with particularity the circumstances constituting fraud or mistake;" however, a *qui tam* complaint may be sufficiently detailed to satisfy the requirement even though it does not identify the specific false claims for payment.  *See United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 854-855 (7th Cir. 2009) (noting that it is not "essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit."); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (stating that the particular circumstances of the fraud "are

---

[1] The United States does not take a position on the Court's rulings on Relators' claims concerning piercing the corporate veil and successor liability as to Defendants The Chubb Corporation and High-Tech Institute (HTI).

often harbored in the scheme.").  As the Fifth Circuit explained in *Grubbs*, "[Rule 9(b)] is context specific and flexible and must remain so to achieve the remedial purpose of the False Claims Act."  *Grubbs*, 565 F.3d at 190.

Although a relator is not required to show the specific false claims at issue in the case to survive a challenge under Rule 9(b), the focus of the Court's Opinions was on the alleged false statements used to get false claims paid.  The Court noted that "the purported false statements [were] not apparent on the face of the documents," and Relators did not provide sufficient detail to explain how the statements were false.  Mem. Op. 3/22/10, at 17-18.  The United States does not take a position on whether the Court's Rule 9(b) ruling can be upheld on this ground.

## B. Establishing Scienter Under the FCA

In its March 22 Opinion, the Court held that the SAC was deficient because Relators failed to sufficiently allege that Defendants acted with the requisite knowledge to establish liability under the FCA.  The Court noted that Relators failed to allege that TCI knowingly used erroneous employment placement data and progress reports to maintain the institution's eligibility for federal funds under Title IV.  The Court went on to state that, to establish a claim under the FCA, Relators had to show that the Defendants "intended to use erroneous data for the

6

purpose of defrauding the Government."  Mem. Op. 3/22/10, at 18.  Citing *Allison*

*Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), the Court held

that "such a fraudulent purpose is a prerequisite to liability under the [FCA]

provision relied upon by Relators, 31 U.S.C. § 3729(a)(2)."  Mem. Op. 5/17/10, at

8.  To the extent that the Court reads the *Allison Engine* decision to require a

specific intent to defraud the government, the United States' respectfully disagrees

with the Court's interpretation of the *Allison Engine* decision.[2]

---

[2] Importantly, as noted in its Statement of Interest filed on August 20, 2009, the Department takes the position that revisions to the FCA's liability provision set forth in former section 3729(a)(2), which Congress enacted in May 2009, apply to all claims (i.e., causes of action) arising under the FCA that were pending on or after June 7, 2008.  *See* Fraud Enforcement and Recovery Act (FERA), S. 386, 111th Cong. § 4(f) (2009) (enacted).  Although the Court here relied on decisions holding that FERA's retroactivity clause refers to claims for payment, the Department respectfully views these decisions as wrongly decided.  Other courts are in agreement with the Department's decision.  *Compare United States ex rel. Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, n.3 (11th Cir. 2009) (defining pending "claim" as claim for payment), *United States ex rel. Bender v. North American Telecommunications, Inc.*, 686 F. Supp. 2d 46, n.4 (D.D.C. 2010) (same), *United States v. Aguillon*, 628 F. Supp. 2d 542, 550-51 (D. Del. 2009) (same), *with United States ex rel. Walner v. Northshore University Healthsystem*, 660 F. Supp. 2d 891, n.3 (N.D. Ill. 2009), *citing United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, n.* (7th Cir. 2009), and *United States ex rel. Carter v. Halliburton Co.*, 2009 WL 2240331, at *5, n.3 (E.D. Va. Jul. 23, 2009).

In enacting the amendments to the FCA, the Senate Judiciary Committee intended the revised language of 31 U.S.C. § 3729(a)(2) (now codified at 31 U.S.C. § 3729(a)(1)(B)) "to clarify and correct erroneous interpretations of the law that were decided in *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct.

It is important to first note that, although the FCA is a fraud statute, it does not require proof of specific intent to defraud the government.  *See id.* at § 31 U.S.C. § 3729(b)(1)(B).  The *Allison Engine* decision did not alter what a plaintiff must prove to show that the defendant knew its statement or claim was false.  The Supreme Court explained that its use of the term "intent" referred to the defendant's awareness that its statement would be material to the government's payment decision and would be potentially relied upon by the government, as opposed to a private party.  The Court's use of the term "intent" did not refer to the defendant's knowledge of the truth or falsity of its statement.  In fact, the Supreme Court explained:

> The statutory definition of ["knowing" and "knowingly"] is easily reconcilable with our holding in this case for two reasons.  First, the intent requirement we discern in § 3729(a)(2) derives not from the term "knowingly," but rather from the infinitive phrase "to get."  Second, § 3729(b) refers to specific intent with regard to the truth or falsity of the "information," while our holding refers to a defendant's purpose in making or using a false record or statement.

128 S. Ct. at 2130, n.2.

Moreover, the Supreme Court expressly held that § 3729(a)(2) was designed

---

2123 (2008) . . . ."  S.  Rep. No. 111-10, 111th Cong. 1st Sess., at 10 (March 23, 2009).  Specifically, the Senate Report discusses how the revised liability provision of section 3729(a)(1)(B) corrects the erroneous "intent" requirement enunciated by the Supreme Court in the *Allison Engine* decision.  *Id.* at 12.

to ensure that "a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct." *Id.* at 2130. (citation omitted).  This holding is consistent with the well-established principle that a defendant intends the natural consequences of its actions.  *See, e.g.*, *Reno v. Bossier Parish School Bd.*, 520 U.S. 471, 487 (1997) ("people usually intend the natural consequences of their actions."); *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 277 (1979) (recognizing "the presumption, common to the criminal and civil law, that a person intends the natural and foreseeable consequences of his voluntary actions."); *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 570 n. 22 (1973) (Marshall, J., concurring in result) ("[P]erhaps the oldest rule of evidence-that a man is presumed to intend the natural and probable consequences of his acts-is based on the common law's preference for objectively measurable data over subjective statements of opinion and intent"); *United States ex rel. Mason v. Medline Industries, Inc.*, No. 07-5615, slip op., 2010 WL 653542, at *7 (N.D. Ill. Feb. 18, 2010) (citing *Allison Engine* for proposition that defendant "is presumed to have intended the natural consequences of its actions.") Thus, where a payment of a claim by the government was the reasonable and foreseeable result of the defendant's conduct, a fact finder may find that the defendant acted with the requisite intent.  As such, the United States respectfully

disagrees with the Court's interpretation that *Allison Engine* requires that it is a prerequisite to liability in this case for the Relators to establish that the Defendants specifically intended to defraud the government; rather, to satisfy the requirements of *Allison Engine*, the Relators need only show that it was reasonably foreseeable that the Defendants' conduct would affect the government's payment of a claim.

### C.   Relators' Allegations With Respect to TCI's Incentive Compensation Plan

Relators alleged that TCI's compensation plan for its admissions representatives violates Title IV's prohibition on incentive compensation paid to recruiters.  Defendants argued that the compensation plan meets the regulatory safe harbor provisions, because the adjustments in pay are "not based solely on the numbers of students recruited, admitted, enrolled, or awarded financial aid."  34 C.F.R. § 668.14(b)(22)(ii).  In its March 22 Opinion, the Court stated, "[a]s a matter of law, the Court agrees with Defendants."  Mem. Op. 3/22/10, at 20.  The Court also noted that "an institution's attempt to comply with the regulatory safeharbor forecloses the finding of scienter required for a [FCA] claim."  Mem. Op. 5/17/10, at 6, citing Mem. Op. 3/22/10, at 21.  Although Defendant TCI's compensation plan may on its face appear to comply with the regulatory safe harbor provision, it is possible that Defendants' implementation of the plan may

10

not comply with the safe harbor, and thus violates Title IV.

If in practice Defendants only rely on the number of students recruited into the program as a basis for increasing or decreasing compensation paid to the admissions representatives, then the plan, in fact, would not meet the regulatory safe harbor provision. Although the Relators here have not specifically alleged that TCI ignores the criteria in its written compensation policy and relies only on the number of students recruited or the number of students awarded financial aid, such facts, if true, would form the basis for a violation of Title IV. *See United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1169 (9th Cir. 2006) (holding relators sufficiently alleged violation of incentive compensation prohibition in claiming that university's policies were "deliberately designed to obscure the fact that enrollment counselors are compensated on a per-student basis . . . "); *United States v. Leveski v. ITT Educational Services, Inc.*, No. 1:07-cv-867-WTL-JMS, 2010 WL 1936118, at *3 (S.D. Ind. May 12, 2010) (denying defendant's motion to dismiss relator's allegation that, although "ITT had a host of factors it considered when calculating bonuses . . .[relator's] contention is that the only factor that ITT *actually* considered was the number of students recruited or the number of students awarded financial aid."). In *United States ex rel. Bott v. Silicon Valley Colleges*, 262 Fed. Appx. 810 (9th Cir. 2008), the Ninth Circuit

11

Court of Appeals held that relators could not show the requisite knowledge to establish a claim under the FCA if defendants complied with a facially valid regulation.  However, the Court also recognized that relators could have established a proper claim under the FCA had they pled "facts demonstrating that the salary review system was merely a sham mechanism for funneling improper incentive pay." *Id.* at 812.  Thus, the United States cannot agree that the Defendants' compensation policies meet the regulatory safe harbor provisions as a matter of law simply by virtue of the fact that the written policies appear compliant.

"Generally speaking, a plaintiff has no obligation to attempt to overcome potential defenses in its complaint . . . . However, if the complaint includes allegations establishing the elements of the defense, it may be dismissed." *Hecker v. Deere & Co.*, No. 06-C-719-S, 2007 WL 3270401, at *3 (W.D. Wis. Oct. 19, 2007), *citing U.S. Gypsum Co. V. Indiana Gas Co.,* 350 F.3d 623 (7th Cir. 2003).  Because it is the defendant's operations and implementation of written policies and plans that bear scrutiny, a determination of whether the safe harbor provision has been met often requires knowledge of facts not in evidence at the pleading stage of a case.  *Cf. Keenan v. Unum Provident Corp.*, 252 F. Supp. 2d 163, 169 (E.D. Pa. 2003) (denying motion to dismiss for additional briefing and testimony

12

to determine whether ERISA safe harbor provision applied).  When a safe harbor

is pled as an affirmative defense, the defendant has the burden of proof to establish

that it meets the qualifications of the safe harbor.  "Once the plaintiff or the

government has established proof of each element of a violation under the [statute

at issue], the burden shifts to the defendant to establish that the conduct was

protected by an exception."   *United States ex rel. Kosenke v. Carlisle HMA, Inc.*,

554 F.3d 88, 95 (3d Cir. 2009) (citation omitted).

//

//

//

## III.    Conclusion

As noted above, the Relators here have filed a motion for reconsideration concerning the issue of the applicability of the safe harbor as an affirmative defense.  The United States respectfully requests that the Court consider the above analysis in rendering its decision upon Relators' motion.

Respectfully submitted,

**TONY WEST**
Assistant Attorney General

**PAUL J. FISHMAN**
United States Attorney
District of New Jersey


By:     *s/ David E. Dauenheimer*
**DAVID DAUENHEIMER**
Assistant U.S. Attorney for the
District of New Jersey

**JOYCE R. BRANDA**
**RENÉE BROOKER**
**ALLISON CENDALI**
Attorneys
U.S. Department of Justice

Dated: June14, 2010

14