NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARY BETH PILECKI-SIMKO and TOM GIUNTA, | Hon. Garrett E. Brown, Jr. |
| Relators, | Civil Action No. 06-3562 |
| v. | **MEMORANDUM OPINION** |
| THE CHUBB INSTITUTE, | |
| Defendant. | |

**BROWN, Chief Judge:**

This matter comes before the Court upon Relators' motion (Doc. No. 60) for reconsideration of the Court's May 17, 2010 Opinion and Order (Doc. Nos. 58, 59 ("May 17 Opinion")) dismissing Relators' Second Amended Complaint (SAC) with prejudice. For the following reasons, the Court will deny Relators' motion.

*Background*

This matter is a *qui tam* action brought pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, by Relators Mary Beth Pilecki-Simko and Tom Giunta against their former employer, The Chubb Institute (TCI). Relators allege that TCI knowingly caused false claims to be filed by making misrepresentations to the Department of Education, its accrediting agencies, and students that wrongfully enabled TCI to secure student financial aid pursuant to Title IV of

1

the Higher Education Act.[1]  Among other misrepresentations, Relators allege that TCI violated Title IV requirements with which it had agreed to comply in the Program Participation Agreement (PPA) that governs an institution's eligibility for the financial aid program, but knowingly continued to submit students' applications for financial aid, which included certifications that the students were eligible for Title IV financial aid, without disclosing that TCI was not in compliance with the program's governing regulations.  (*See* SAC ¶¶ 24, 51–86.)  This theory of False Claims Act liability has been referred to as the implied false certification theory of liability.  *See, e.g.*, *United States ex rel. Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 303 (3d Cir. 2009).

Defendants TCI, the Chubb Corporation, and High-Tech Institute (HTI) moved to dismiss Relators' SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).  This Court granted the motions on March 22, 2010.  (Doc. Nos. 52, 53 ("March 22 Opinion").)  In granting Defendants' motions, the Court held that Relators' allegations of Defendants' misconduct failed to plead a False Claims Act claim with particularity.  March 22 Opinion at 17–23.  Although Relators had not specifically sought leave to amend to cure any pleading deficiencies, the Federal Rules' liberal standard for granting leave to amend deficient pleadings prompted this Court, out of an abundance of caution, to give Relators an opportunity to explain

---

[1] Relators initially sought to impose liability for this conduct on TCI's former corporate parents, High-Tech Institute, The Chubb Corporation, and Chubb America Service Corporation, on the basis of their alleged control of TCI's actions.  This Court dismissed Relators' veil-piercing and successor liability claims without prejudice on March 22, 2010, and Relators did not seek leave to amend these claims in response to the Court's accompanying Order to Show Cause.  Accordingly, the Court dismissed these claims with prejudice on May 17, 2010.  May 17 Opinion at 4 & n.1.

why they should be permitted a third chance to amend their pleadings. Accordingly, the Court dismissed the SAC without prejudice and ordered Relators to show cause ("Order to Show Cause") why the SAC should not be dismissed with prejudice.

Relators timely responded to the Order to Show Cause with a memorandum seeking leave to amend the SAC only with regard to allegations that TCI (1) falsely certified compliance with the incentive compensation ban imposed by Title IV of the Higher Education Act, 20 U.S.C. § 1094(a)(20),[2] and (2) misrepresented employment placement statistics. The Court found that Relators' submissions did not cure the pleading deficiencies identified by the Court's March 22 Opinion, determined that further amendment would be futile, and, therefore, dismissed the SAC with prejudice. May 17 Opinion at 4–10.[3]

Relators now move for reconsideration of the May 17 Opinion to the extent that it dismissed Relators' claim that TCI falsely certified compliance with Title IV's incentive compensation ban.

### *Analysis*

It is well settled in this Circuit that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Courts will only grant reconsideration in the

---

[2]Title IV's incentive compensation ban prohibits participating institutions from "provid[ing] any commission, bonus, or other incentive payment based directly or indirectly upon success in securing enrollments or financial aid to any person or entity engaged in any student recruiting or admission activities . . . ." 20 U.S.C. § 1094(a)(20); *accord* 31 C.F.R. § 668.14(b)(22)(i).

[3]The Court's May 17 Order conditioned dismissal of the SAC upon the Government's consent, pursuant to 31 U.S.C. § 3730. The Government filed a supplemental statement of interest on June 14, 2010, that contends that the Government's consent is not required for this type of involuntary dismissal. (Doc. No. 62 at 2–3.)

following circumstances: (1) when intervening changes in controlling law occur; (2) when previously unavailable evidence comes to light; or (3) when "necessary to correct a clear error of law or prevent manifest injustice." *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993) (citation omitted); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Reconsideration is "an extraordinary remedy" that is to be granted "very sparingly." *In re Lord Abbett Mut. Funds Fee Litig.*, 417 F. Supp. 2d 624, 627 (D.N.J. 2005) (quoting *Yurecko v. Port Auth. Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 608 (D.N.J. 2003)). "[A] motion for reconsideration is not an appeal," *Feit v. Great-West Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 643 (D.N.J. 2006), and a party may not "ask the court to rethink what it ha[s] already thought through—rightly or wrongly," *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (quoting *Above the Belt v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

Relators argue that this Court committed a clear error of law when it dismissed their claim that TCI falsely certified compliance with Title IV's incentive compensation ban. Relators present three basic arguments on reconsideration: (1) that the Court improperly made a legal determination at the motion to dismiss stage that the regulatory safeharbor provision, 31 C.F.R. § 668.14(b)(22)(i), barred Relators' claim; (2) that the safeharbor provision does not apply to Relators' allegations concerning TCI's conduct prior to the provision's effective date in 2003; and (3) that the safeharbor provision does not bar a claim based upon Relators' allegations that TCI provided "President's Club" trips to its top admissions representatives.[4] As the Court

---

[4] Relators also present a 2004 Department of Education report finding that other educational institutions utilized incentive compensation policies that were prohibited by Title IV. Relators rely on this report to argue that a facially compliant incentive policy can violate Title IV's incentive compensation ban. (Relators' Recons. Br. at 10–11.) However, the Department

explains below, Relators' motion is procedurally improper, and Relators have not demonstrated a clear error of law that would result in manifest injustice. Therefore, the "extraordinary remedy" of reconsideration is not warranted.

### A. Procedural Defects

Relators' motion for reconsideration is procedurally improper because it both seeks to reargue matters previously argued before the Court and raises new arguments not presented in response to either the original motion to dismiss or the Order to Show Cause. These defects, alone, warrant denial of Relators' motion. *E.g.*, *Feit*, 460 F. Supp. 2d at 643 ("Local Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rendering its decision."); *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) (explaining that motions for reconsideration "are *not* an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers."); *see also Dunkley v. Mellon Investor Servs.*, No. 09-3609, 2010 WL 1767238, at *2 (3d Cir. May 4, 2010) ("A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.") (citations and internal quotation marks omitted).

With regard to arguments already presented to the Court, Relators rely on the same examples of TCI's compensation plans from 2003 and 2004 and the supplemental declaration of Tom Giunta that they relied on in responding to the Court's Order to Show Cause. (*See* Relators' Recons. Br. at 7.) As before, Relators argue that the compensation plans and the supplemental declaration demonstrate that TCI "intentionally deceptively designed their incentive

---

of Education's factual findings and legal determinations regarding other institutions' compliance with Title IV has no bearing on this Court's consideration of whether Relators have properly *pled* a False Claims Act claim that TCI knowingly made or used a false statement to get a false claim paid.

compensation program and knew they were violating the Title IV incentive compensation ban." (Relators' Recons. Br. at 7.)  However, this is essentially the same argument that Relators' raised in opposition to the original motion to dismiss: that the compensation plans demonstrate non-compliance with the Title IV ban, and thus evince that TCI made a knowingly false statement of compliance when they certified students' eligibility for financial aid.  Indeed, the similarity in Relators' arguments in response to the motion to dismiss and the Order to Show Cause prompted the Court to characterize this portion of Relators' response to the Order to Show Cause as a *motion for reconsideration*.  May 17 Opinion at 5.  The only information added by the supplemental declaration in response to the Court's Order to Show Cause was Relator Giunta's conclusory assertions that TCI "cleverly disguised" the plans to appear compliant with federal regulations, that TCI's plans did not adhere to federal regulations in practice, and that the mathematical formula applied in the compensation plans is weighted so as to award salary bonuses only on the basis of enrollment numbers, a consideration prohibited by Title IV's incentive compensation ban.  (Giunta Supp. Decl. ¶¶ 2–18.)  He did not allege specific facts that would permit the inference that TCI had made or used a knowingly false statement to get a false claim paid, *i.e.* conversations among TCI policymakers regarding the purpose of the compensation plans, instances where TCI policymakers instructed employees to disregard applicable regulations or certain portions of TCI's own compensation plans, or instances where TCI policymakers disregarded notifications of non-compliance with applicable regulations.  Thus, the conclusory statements in the supplemental declaration did not cure Relators' pleading deficiency.

      Rather than presenting the more particularized factual allegations requested by the

Court's Order to Show Cause, Relators primarily relied (and still rely) on the same exhibits and arguments that they presented in opposition to the original motion to dismiss.  The Court has twice rejected Relators' argument that the TCI compensation plans attached to the SAC, by themselves, demonstrate that TCI knowingly falsely certified compliance with Title IV's incentive compensation ban.  Relators may not attempt a third bite at the apple.[5]

Relators' motion is also improper because it raises two arguments not previously raised in response to Defendants' original motions to dismiss or in response to the Court's Order to Show Cause, namely that the regulatory safeharbor did not apply to (i) their allegations concerning TCI's pre-2003 incentive plans, or (ii) their allegations concerning TCI's President's Club.[6]  Relators have provided no explanation for why they did not advance these arguments in response to the motion to dismiss or Order to Show Cause.  To allow reconsideration on the basis of

---

[5]Indeed, the present motion, though styled as a motion seeking reconsideration of the May 17 Opinion, is really an untimely and improper second request for reconsideration of the March 22 Opinion.  The limitations period for filing a motion for reconsideration is "14 days after the entry of the order or judgment on the original motion by the Judge."  L. Civ. R. 7.1(i).  The March 22 Opinion held that Relators failed to plead with particularity "that TCI acted with scienter by falsely certifying compliance with Title IV's incentive compensation ban."  March 22 Opinion at 21.  The May 17 Opinion, which rejected Relators' arguments in support of this claim and deemed further amendment futile, *see* May 17 Opinion at 5–7, did not substantively change the March 22 Opinion.  Where a subsequent order does not substantively change the initial order, the Local Rule's limitations period runs from the initial order.  *See, e.g.*, *Omar v. Mueller*, No. 07-813, 2007 WL 2868102, at *1 (D.N.J. Sept. 27, 2007) (finding that an amended order that did not change the substantive rulings of the prior order did not reset the clock for the filing of a motion for reconsideration); Allyn Z. Lite, New Jersey Federal Practice Rules, cmt. to Rule 7.1 at 68 (2010 ed.).  Relators filed the present motion on June 1, 2010, more than two months after the March 22 Opinion and well after the 14-day period provided by Local Rule 7.1(i).

[6]The Court notes that Relators improperly presented the President's Club argument for the first time in a reply brief without prior leave of the Court.  *See* L. Civ. R. 7.1(d)(3) ("No reply papers shall be filed on a motion for reconsideration pursuant to L. Civ. R. 7.1(i) or on a cross-motion, unless the Court otherwise orders.").  By Letter Order of July 12, 2010, the Court exercised its discretion to allow Relators' Reply Brief and permitted TCI to file a sur-reply responding to the new argument.

Relators' new arguments would greatly expand the scope of the reconsideration doctrine and undermine the finality of judicial decisions. *See, e.g.*, *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994) ("The purpose of the rule, which limits the motion to facts and law 'overlooked' in the original motion is 'to encourage parties to present their positions as completely as possible, and to prevent parties from filing a second motion, with the hindsight provided by the court's analysis, covering issues that should have been raised in the first set of motions.'") (quoting *United States v. Torres*, Crim. No. 89-240, slip op. (D.N.J. Mar. 30, 1990); *Bowers*, 130 F. Supp. 2d at 613 (explaining that "the initial motion is the 'main event,' not a 'tryout on the road' to a motion for reargument").

In sum, Relators' motion does not present proper grounds for reconsideration. Thus, Relators' motion for reconsideration must be denied.

*B. Relators' Arguments*

Even if Relators' motion was procedurally sound, Relators' arguments do not demonstrate a clear error of law warranting reconsideration. Each of Relators' arguments contends to some degree that the Court erred in its application of the regulatory safeharbor that, notwithstanding the Title IV ban, permits certain salary adjustments "not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid." 31 C.F.R. § 668.14(b)(22)(ii)(A).[7] However, Relators' focus on this portion of the Court's ruling, which

---

[7]The regulatory safeharbor provision permits:

> The payment of fixed compensation, such as a fixed annual salary or a fixed hourly wage, as long as that compensation is not adjusted up or down more than twice during any twelve month period, and any adjustment is not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid.

addresses Relators' contention that TCI violated the Title IV ban, disregards the more germane issue decided by the Court: whether TCI "knowingly ma[de], us[ed], or caus[ed] to be made or used, . . . a false statement to get a false or fraudulent claim paid . . . ." 31 U.S.C.A. § 3729(a)(2) (West 2003 & Supp. 2008).[8] As a claim arising under the False Claims Act, the

---

31 C.F.R. § 668.14(b)(22)(ii)(A). Relators take issue with this Court's conclusion, in both the March 22 and May 17 Opinions, that TCI's compensation plans complied with the regulatory safeharbor provided by 31 C.F.R. § 668.14(b)(22)(ii)(a). *See* March 22 Opinion at 20–21; May 17 Opinion at 5–6. Specifically, Relators argue that this Court improperly determined facts at the motion to dismiss stage in determining the application of the regulatory safeharbor to Relators' allegations.

Relators overlook the fact that, at both the motion to dismiss stage and in response to the Court's Order to Show Cause, they presented examples of TCI's alleged compensation policy with their pleadings and argued that these documents demonstrated that TCI had knowingly falsely certified compliance with Title IV's incentive compensation ban. (Relators' MTD Br. (Doc. No. 45) at 13; Relators' OTSC Br. at 3–4; *see generally* Giunta Supp. Decl.) Importantly, Relators did not allege that TCI's compensation policies were based *solely* on considerations prohibited by the Title IV ban, so as to plead around the safeharbor, nor did they provide particularized allegations that TCI policymakers implemented the TCI compensation policies in a manner that violated Title IV, or instructed others to do the same. Instead, Relators presented legal conclusions about these plans' non-compliance with Title IV's incentive compensation ban and conclusory assertions about the intent behind the plans. (*See generally* Giunta Supp. Decl.)

In the absence of particularized factual allegations permitting the inference that TCI policymakers knowingly made or used false statements to get false claims paid, the Court addressed Relators' legal arguments about the alleged TCI incentive plans, finding them flawed. March 22 Opinion at 21 ("Relators do not allege that TCI based its compensation practices solely on means prohibited by the Title IV ban, and the examples [of TCI's incentive plans] provided with the SAC demonstrate that TCI's compensation scale complied with the regulatory safeharbor." (citations to TCI incentive plans omitted)); May 17 Opinion at 6 ("While Relators' factual deduction that TCI employees could not receive a bonus under the compensation plan without meeting certain enrollment objectives is sound, its legal conclusion that this compensation plan did not comply with the regulatory safeharbor is not."). The Court's ruling regarding the regulatory safeharbor, thus, is best understood as a response to the specific arguments advanced by Relators. Contrary to Relators' representations, the TCI compensation plans provided with the SAC do not, by themselves, establish that TCI's compensation program violated the Title IV incentive compensation ban.

[8]This Court continues to apply § 3729 as it appeared prior to amendments made by the Fraud Enforcement Recovery Act in 2009 for the reasons stated in the March 22 Opinion. March 22 Opinion at 9 n. 10. Neither party has suggested that the 2009 revisions apply to this case, or that they would materially affect this Court's analysis.

primary issue is not whether the institution complied with regulations governing the distribution of federal funds, but whether the institution knowingly made, used, or caused to be made or used a false statement to get a false claim paid.

In addition to the Court's observations regarding the regulatory safeharbor, the Court found that Relators had failed to allege circumstantial facts permitting the inference that TCI acted with scienter by falsely certifying compliance with the Title IV ban.  March 22 Opinion at 21.  Although the Court did not elaborate on Relators' pre-2003 and President's Club allegations, primarily because Relators did not advance them in opposing the motion to dismiss, these allegations suffered from the same Rule 9(b) pleading deficiency that plagued Relators' other theories of a False Claims Act claim: the complete absence of factual allegations that would reasonably permit the inference that TCI policymakers acted with scienter by knowingly making, using, or causing to be made or used a false statement to get a false claim paid.  *Compare* March 22 Opinion at 21 *with id.* at 17–20.  Presuming Relators' allegations to be true, the mere fact that TCI policies violated federal regulations and TCI failed to disclose this information on students' applications for financial aid does not establish False Claims Act liability under 31 U.S.C.A. § 3729(a)(2) (West 2003 & Supp. 2008), for knowingly making, using, or causing to be made or used a false statement to get a false claim paid.  *See, e.g.*, *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]raud requires more than breach of promise: fraud entails making a false representation, such as a statement that the speaker will do something it plans not to do.  Tripping up on a regulatory complexity does not entail a knowingly false representation.").  Relators failed to provide more particularized allegations in response to the Court's Order to Show Cause, and they do not attempt to cure this pleading deficiency with

the present motion.

Relators further contend that this Court's application of Rule 9(b)'s heightened pleading standard is too strict. This argument speaks to an issue also addressed by the Government's supplemental statement of interest, which takes issue with the Court's characterization of the Supreme Court's decision in *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008). (*See* Gov't Supp. Statement of Interest at 7.) The Court sees fit to clarify what the Court has referred to as the "scienter requirement" in both the March 22 and May 17 Opinions, and why Relators' pleadings have been deficient.

To present a subsection (a)(2) False Claims Act claim, Relators needed to allege with particularity direct or circumstantial facts that would permit a reasonable inference that TCI knowingly made, used, or caused to be made or used a false statement to get a false claim paid. 31 U.S.C.A. § 3729(a)(2) (West 2003 & Supp. 2008). The Supreme Court in *Allison Engine* differentiated between the two scienter requirements imposed by subsection (a)(2). The first scienter element required the *knowing* making or using of a false statement, or causing the same to be made or used, and the second scienter element involved using the false statement *to get* a false claim paid. *Allison Engine*, 128 S. Ct. at 2130 & n.2. While the *Allison Engine* Court held that the latter scienter element relating to submission of the false claim required that "the defendant made a false record or statement *for the purpose* of getting 'a false or fraudulent claim paid or approved by the Government,'" *id.* at 2130 (emphasis added), the Court noted that the scienter requirement "with regard to the truth or falsity of the 'information'" contained in the false statement derived from § 3729(b), *id.* at 2130 n.2. Section 3729(b) defines "knowingly" to refer to "a person, with respect to information [who] (i) has actual knowledge of the information;

11

(ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information," but expressly states that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b)(1). Thus, this Court acknowledged in the March 22 Opinion that the False Claims Act required, at a minimum, an incorrect statement made, used, or caused to be made or used with "reckless disregard of the truth or falsity of the information." *See* March 22 Opinion at 18.

The Government's Statement of Interest contends that this Court erroneously applied a specific intent requirement for the first scienter requirement related to the falsity of the statement made, used, or caused to be made or used. (*See* Gov't Supp. Statement of Interest at 7.) While portions of this Court's May 17 Opinion invoked the *Allison Engine* "purpose to get false claims paid" scienter requirement for the submission of false claims, it was not this Court's intention to suggest that *Allison Engine* or § 3729(b) required a specific intent to defraud with regard to the making or using of a false statement. It bears mentioning, though, that *Allison Engine* did not address an implied false certification theory of False Claims Act liability, which courts have applied with greater caution than traditional false claims analysis. As a number of courts have recognized, the implied false certification theory—which imposes liability on the basis of a party's failure to disclose its non-compliance with regulations governing the issuance of federal funding—has the potential to expand the False Claims Act beyond fraudulent acts. *See, e.g.*, *Rodriguez*, 552 F.3d at 304 (expressing concern that the False Claims Act would become a "blunt instrument to enforce compliance with all . . . regulations") (quoting *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001)).[9] Because of its potential to exceed the anti-

---

[9]As this Court noted in the March 22 Opinion, the Third Circuit has twice declined to adopt the implied false certification theory of False Claims Act liability, but it has not ruled out

fraud purpose of the False Claims Act, courts have stressed the importance of the actor's scienter in making the false statement. *See, e.g.*, *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) ("[E]mphasiz[ing] the central importance of the scienter element to liability under" the false certification theory, noting that "a palpably false statement, known to be a lie when it is made, is required for a party to be found liable under the False Claims Act") (citations omitted); *Main*, 426 F.3d at 917 (explaining that False Claims Act liability attaches under the related promissory fraud theory[10] where "the University not only knew, when it signed the phase one application, that contingent fees to recruiters are forbidden, but also planned to continue paying those fees while keeping the Department of Education in the dark"); *cf. Mikes*, 274 F.3d at 700 ("Liability under the Act may properly be found therefore when a defendant submits a claim for reimbursement while knowing—as that term is defined by the Act, *see* 31 U.S.C. § 3729(b)—that payment expressly is precluded because of some noncompliance by the defendant."). In particular, *Hendow* and *Main* are instructive, because these cases dealt with similar allegations that an educational institution continued to submit student applications for financial aid without disclosing its failure to comply with Title IV's incentive compensation ban.

Measured against the minimum scienter element provided by § 3729(b)—reckless disregard of the truth or falsity of the information—Relators have not alleged particularized facts

---

the possibility that it will adopt the doctrine in the future. *See Rodriguez*, 552 F.3d at 303–04 & n.6; *United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 441–43 (3d Cir. 2004).

[10]This Court described the promissory fraud theory examined in *Hendow* and *Main* as the opposite side of the implied false certification coin. March 22 Opinion at 13 n.11 (explaining that courts have looked to the same elements for both theories of False Claims Act liability). "The difference between the two, so far as the Court can discern, is when the institution manifested the scienter to defraud the Government: when it signed the PPA (promissory fraud), or when it purposely caused claims to be filed, knowing that it was violating the PPA (false certification)." *Id.* (citations omitted).

permitting the inference that TCI acted with scienter by making or using a false statement, either in the PPA (promissory fraud) or in conjunction with students' applications for financial aid (implied false certification). In both the SAC and proposed Third Amended Complaint, Relators' theory of scienter appears to be that the mere existence of these compensation policies rendered TCI ineligible for participation in the Title IV program, and that its continued submission of student applications for funds demonstrated a knowingly false certification of eligibility. (See SAC ¶ 78 ("Chubb by violating the incentive compensation ban falsely asserts compliance with HEA, Title IV [sic] Chubb's request for [student financial aid] arranged, managed and prepared by Chubb, includes a student application that contains an express certification by Chubb that the student is an eligible student under the Title IV program. Chubb knows that this claim for funds is false because Chubb knows its students are not eligible under the Title IV program due to Chubb's violations of the HEA incentive compensation ban."); TAC ¶ 45 (same).). However, besides their conclusory assertions that TCI *knew* its compensation policies violated Title IV but nevertheless continued to submit student applications certifying continued eligibility, Relators allege no facts permitting the inference that TCI policymakers had notice, or reasonably should have had notice, that its policies were in violation of the Title IV ban. The conclusory allegations in this case, thus, stand in stark contrast to the particularized allegations that the Ninth Circuit found sufficient to state a false certification claim in *Hendow*: specific instances of improper bonuses, policymakers "openly bragg[ing] about perpetrating fraud, that the University had an established infrastructure to deceive the government, and that the University repeatedly changed its policies to hide its fraud." *Hendow*, 461 F.3d at 1175. The compensation plans themselves cannot cure this pleading deficiency. Presuming that TCI's

14

compensation policies violated Title IV's incentive compensation ban, Relators have presented no allegations—i.e., notices, conversations, "red flags"—that would permit the reasonable inference that TCI policymakers made, used, or caused to be made or used, a false statement, with reckless disregard for the truth or falsity of the information, to get a false claim paid. *See, e.g.*, *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1210 (11th Cir. 2001) (finding in a case involving securities fraud claims that "the series of inferences is too tenuous" to satisfy Rule 9(b)'s heightened pleading requirements where plaintiffs failed to allege "tips, letters, or conversations raising inferences that [the defendant] knew of any fraud" or "was severely reckless in not knowing about any fraud").[11] Having failed to meet the minimum scienter standard for the falsity of the statement, Relators' allegations necessarily fail to meet the standards articulated by the *Hendow* and *Main* courts.

Courts have recognized that a party's failure to heed court instructions regarding remedying such pleading deficiencies justifies dismissal. *E.g.*, *United States ex rel. Claussen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (citing *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985)). This Court identified Relators' pleading deficiency in the March 22 Opinion and gave Relators an opportunity to show cause why they should be permitted to amend the SAC. March 22 Opinion at 17–23, 33–34. Relators did not provide more particularized

---

[11]The absence of "red flags" also distinguish the present matter from *Abner v. Jewish Hospital Health Care Services*, No. 4:05-106, U.S. Dist. LEXIS 61985 (S.D. Ind. Mar. 5, 2009), which Relators argue supports a more lenient application of Rule 9(b). The relators in *Abner* alleged that the laboratory supervisor "instructed laboratory employees to engage in" a fraudulent billing practice. *Id.* at *17–21. Moreover, the alleged fraudulent billing practice in *Abner* involved submitting Medicare and Medicaid invoices for services that had not been performed, and thus did not constitute "honest billing errors." *Id.* at *17–18. The hypothetical equivalent for the present case would be an educational institution submitting financial aid applications for students that did not exist.

allegations in response to the Court's Order to Show Cause, and they do not now attempt to present more particularized factual allegations that would permit the inference that TCI knowingly made, used, or caused to be made or used, a false statement. Thus, Relators have not demonstrated clear error with this Court's Rule 9(b) conclusion in the March 22 Opinion. Nor have Relators demonstrated clear error with regard to the Court's May 17 finding that further amendment would be futile. As the Court noted in the March 22 Opinion, Relators have already amended the original Complaint twice, and Relators have had access to numerous TCI records by virtue of a Government subpoena served in 2007.

The Court has also accorded Relators considerable latitude in the presentation of their claims. May 17 Opinion at 3–4 (noting Relators' failure to provide a proposed Third Amended Complaint); Letter Order of July 12, 2010 (permitting Relators' improper reply brief). Relators' repeated failure to cure this pleading deficiency warranted—and still warrants—dismissal of this action. Accordingly, the Court will deny Relators' motion for reconsideration.

### *Conclusion*

For the aforementioned reasons, the Court will deny Relators' motion (Doc. No. 60) for reconsideration. An appropriate form of order accompanies this Memorandum Opinion.

Dated: August 27, 2010

             /s/ Garrett E. Brown, Jr.
            GARRETT E. BROWN, JR., U.S.D.J.